**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 00-30652

JAMES P. LOGAN, JR.,

Plaintiff,

versus

BURGERS OZARK COUNTRY CURED HAMS INC; ET AL,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES P. LOGAN, JR.,

Plaintiff-Appellant-Cross-Appellee,

versus

ORIGINAL HONEY BAKED HAM
COMPANY OF GEORGIA, ETC.; ET AL,

Defendants,

ORIGINAL HONEY BAKED HAM
COMPANY OF GEORGIA, doing business as
Honeybaked Ham Co.; Honeybaked Foods Inc.,
doing business as Honeybaked Ham Co.,

Defendants-Appellees-Cross-Appellants.

Appeals from the United States District Court
for the Western District of Louisiana

September 12, 2001

Before STEWART and PARKER, Circuit Judges, and GOLDBERG[*], Judge.

CARL E. STEWART, Circuit Judge:

James P. Logan ("Logan") appeals from the district court's judgment, partially granting the motion for judgment as a matter of law brought by The Original HoneyBaked Ham Company of Georgia, Inc., and HoneyBaked Foods, Inc., (collectively, "HoneyBaked") following a jury trial. Also, HoneyBaked appeals the district court's refusal to grant certain portions of its motion for judgment as a matter of law. For the following reasons, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Logan holds several patents on a method of spirally slicing boneless meat products and sells meat products that were cut using this method in several retail outlets. In July 1997, Logan filed a patent infringement suit against HoneyBaked, alleging violations of his patents for the spiral slicing method in cutting boneless turkey breasts.

As part of a resolution of the litigation, the parties entered into a license agreement whereby HoneyBaked would provide royalties to Logan for all boneless meat products it sold that were cut using the spiral slicing process. The contract did not specifically state that HoneyBaked was obligated to sell any of Logan's product.

Before it was to begin paying royalties, HoneyBaked ordered its sellers not to sell the meat products that were subject to the agreement. Only a small quantity of the meat was sold, and consequently, Logan received only a small payment from HoneyBaked. However, HoneyBaked continued to use pictures of the spiral sliced meat products in its advertising. A few stores owned

---

[*]Judge of the United States Court of International Trade, sitting by designation.

by Logan continued to sell the spiral sliced meat products.

After the parties had reached their agreement and shortly before the deadline for entry of the order dismissing Logan's suspended patent infringement claim, Logan discovered that HoneyBaked had discontinued its sales of spiral sliced meat products. He also discovered that HoneyBaked owed him very little in royalties. Thus, he resumed litigating his patent infringement claim, adding claims for breach of contract, or in the alternative, rescission due to error or fraud, false advertising under the Lanham Act, 15 U.S.C. § 1125(a), and Louisiana unfair competition and deceptive trade practices law.

The district court bifurcated Logan's claims, ruling that Logan's nonpatent claims would be tried first. Following trial on the nonpatent claims, the jury found that HoneyBaked did not breach a valid agreement with Logan. However, the jury also found that the receipt of a stream of royalties was a principal cause of the contract and that HoneyBaked knew or should have known this fact. The jury concluded that Logan's consent to the license agreement had been obtained by fraud. The jury also determined that HoneyBaked had willfully violated the Lanham Act by falsely advertising spiral sliced meat products. However, it found that Logan had not established any actual losses with respect to the Lanham Act violation. The jury awarded Logan $8.8 million on the fraud claim and $480,000 on the Lanham Act claim.[1]

After the jury returned its verdict, Logan moved to dismiss his pending patent infringement

---

[1]These amounts are the combined totals of the jury's award with respect to both The Original HoneyBaked Ham Company of Georgia and HoneyBaked Foods, Inc. The jury found that Logan is entitled to $7,934,218 from The Original HoneyBaked Ham Company of Georgia as a result of the rescission of the license agreement due to fraud and $400,000 for the Lanham Act violation. With respect to HoneyBaked Foods, Inc., the jury found that Logan is entitled to $809,540 for rescission due to fraud and $80,000 under the Lanham Act.

3

claims with prejudice on the condition that HoneyBaked dismiss its declaratory judgment patent claim. On August 9, 1999, the district court dismissed all of the patent claims. However, the court did not specify whether the dismissal was with or without prejudice. On May 17, 2000, upon motion by HoneyBaked and one day after Logan filed his notice of appeal to this Court, the district court entered an order attempting to correct its April 19, 2000, memorandum ruling, which indicated that Logan's patent infringement claims had been dismissed without prejudice and that he was free to pursue those claims. The court stated that the dismissal of the patent claims had been with prejudice.

On February 15, 2000, the district court entered final judgment. The court declined to award prejudgment interest to Logan with respect to the jury's verdict on his fraud claim. The court also denied Logan's request for attorney's fees with respect to his Lanham Act claim. However, it granted Logan attorney's fees with respect to the fraud claim. Also, in its February 15th ruling, the district court noted its denial of Logan's request for a permanent injunction against future Lanham Act violations.

After the district court entered final judgment, HoneyBaked moved for judgment as a matter of law. On April 19, 2000, the district court granted HoneyBaked's motion regarding damages for Logan's fraud claim and profits for the Lanham Act violation. Thus, it vacated and set aside all monetary awards. However, the court denied HoneyBaked's motion with respect to the remaining aspects of the jury's verdict and entered final judgment. Logan now appeals the district court's grant of judgment as a matter of law on the issue of damages for fraud and profits for the Lanham Act violation. He also appeals the court's determination that he is not entitled to prejudgment interest on the fraud damages and its refusal to grant an injunction against further Lanham Act violations. In its cross-appeal, HoneyBaked argues that the district court erred in denying its motion for

4

judgment as a matter of law on the claims that it committed fraud and willfully violated the Lanham Act.

DISCUSSION

I.      Jurisdiction

We must, as an initial matter, address whether we have jurisdiction over this case or whether this case should be decided by the United States Court of Appeals for the Federal Circuit.

Uncertain as to whether this Court or the Federal Circuit has jurisdiction over the instant appeal, Logan filed a notice of appeal in both courts. Subsequently, believing that jurisdiction is proper in this circuit, Logan, with the approval of HoneyBaked, moved the Federal Circuit to grant a non-prejudicial dismissal or transfer of appeal to this Court. The Federal Circuit, in a single judge order, denied Logan's motion to dismiss or transfer, finding that it has appellate jurisdiction over the instant case. After oral argument before this Court, Logan, unopposed by HoneyBaked, moved the Federal Circuit to stay proceedings in the case until this Court issues a ruling. The Federal Circuit granted that motion.

28 U.S.C. § 1295(a)(1) grants exclusive jurisdiction to the Federal Circuit over "an appeal from a final decision of a district court of the United States . . . if the jurisdiction of that court was based, in whole or in part, on section 1338 of this title." 28 U.S.C. 1295(a)(1). Section 1338(a) grants to district courts "original jurisdiction of any civil action arising under any Act of Congress relating to patents." 28 U.S.C. § 1338(a). The Supreme Court has held that "§ 1338(a) jurisdiction . . . extend[s] only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of

5

one of the well-pleaded claims." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 808-09 (1988).

In Christianson, both the Seventh Circuit and the Federal Circuit found that they lacked the jurisdiction over a case, transferring it to each other. Christianson, 486 U.S. at 803. The plaintiff's well-pleaded complaint contained two claims under the Sherman Act. Id. at 810. The Court determined that a patent law issue was arguably necessary for at least one theory under each claim but was not necessary for the success of either claim. Id. Thus, the Court held that the Seventh Circuit had jurisdiction. Id.

Even though jurisdiction is determined at the outset of the suit, the Federal Circuit has held that where patent claims are dismissed without prejudice from complaints containing multiple counts, it has no jurisdiction over an appeal of the non-patent claims. See Nilssen v. Motorola, Inc. 203 F.3d 782 (Fed. Cir. 2000). In Nilssen, the court agreed with one party that bifurcating the case was an efficient way to manage the trial and dismissed the patent claims without prejudice under Fed. R. Civ. P. 41(b), which provides for involuntary dismissals of a plaintiff's claims. Id. at 783. The plaintiff re-filed the patent infringement claims in a separate action. Id. Resolving the jurisdiction issue, the Federal Circuit stated, "We agree . . . that we lack jurisdiction . . . . There is no dispute that Nilssen's complaint originally contained a well-pleaded claim for patent infringement . . . . Jurisdiction normally attaches at the time of filing based on pleadings. Had the patent claims remained in the case, we surely would have had jurisdiction." Id. at 784. The court found that, because the patent claims were dismissed without prejudice under Rule 41(b), the district court no longer had jurisdiction over the remaining state law claims based on 28 U.S.C. § 1338 but that its jurisdiction was instead based on

6

28 U.S.C. § 1367.[2] Id.

The Nilssen court rejected the plaintiff's argument that the jurisdictional issue must always be determined on the basis of the claims existing at the commencement of the suit because that contention is contrary to its holding in Gronholz v. Sears, Roebuck & Co., 836 F.2d 515, 518 (Fed. Cir. 1987). Nilssen, 203 F.3d at 784. In Gronholz, the plaintiff filed a complaint consisting of a patent claim and a non-patent claim in the district court. Gronholz, 836 F.2d at 516. After the defendant obtained a favorable summary judgment ruling on the non-patent claim, the plaintiff moved voluntarily to dismiss both claims. Id. The district court granted the dismissal motion on the patent claim but denied the motion as to the non-patent claim. Id. The plaintiff then appealed to the Federal Circuit from the judgment on the non-patent claim. Id. The defendant moved for a transfer of appeal on the grounds that the Federal Circuit lacked jurisdiction. Id. Granting the transfer motion, the Federal Circuit found that the plaintiff's dismissal constituted an amendment of his complaint which left only a non-patent claim:

> Gronholz's dismissal of the patent claim constituted an amendment of his complaint. That amendment left a complaint which consisted of a single, non-patent claim for unfair competition. Applying the well-pleaded complaint rule to the complaint then remaining, we determine that the present suit does not 'arise under' the patent laws for jurisdictional purposes.

Id.

In determining that the dismissal of the patent claim constituted an amendment of the

---

[2]Section 1367 provides for supplemental jurisdiction in district courts, where the courts have original jurisdiction, "over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367.

7

plaintiff's complaint, the <u>Gronholz</u> court noted that Fed. R. Civ. P. 41(a)[3] governs a plaintiff's motion

for voluntary dismissal.  <u>Id.</u> at 517.  However, the court determined that Rule 41(a), which refers to

"actions" as opposed to "claims," does not apply in circumstances in which the plaintiff sought

voluntary dismissal of fewer than all of her claims and that "a plaintiff's motion to dismiss a single

claim of a multi-count complaint is properly treated as an amendment under Fed. R. Civ. P. 15."  <u>Id.</u>

The <u>Nilssen</u> court rejected the plaintiff's attempt to distinguish <u>Gronholz</u> on the basis that his

patent claims had been involuntarily dismissed under Fed. R. Civ. P. 41(b).  The court stated:

> Although we agree with Nilssen that an involuntary dismissal of a claim is technically
> not an amendment, that distinction is not controlling.  The true state of affairs is more
> critical than mere labels.  The fact that a voluntary dismissal of a claim under Rule
> 41(a) is properly labeled an amendment under Rule 15 is a technical, not a

---

[3]Rule 41(a) provides:

Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United
States, an action may be dismissed by the plaintiff without order of court (i) by filing
of a notice of dismissal at any time before service by the adverse party of an answer
or of a motion for summary judgment, whichever first occurs, or (ii) by filing a
stipulation of dismissal signed by all parties who have appeared in the action.  Unless
otherwise stated in the notice of dismissal or stipulation, the dismissal is without
prejudice, except that a notice of dismissal operates as an adjudication upon the merits
when filed by a plaintiff who has once dismissed in any court of the United States or
any state an action based on or including the same claim . . . .

Except as provided in paragraph (1) of this subdivision of this rule, an action shall not
be dismissed at the plaintiff's instance save upon order of the court and upon such
terms and conditions as the court deems proper.  If a counterclaim has been pleaded
by a defendant prior to the service upon the defendant of the plaintiff's motion to
dismiss, the action shall not be dismissed against the defendant's objection unless the
counterclaim can remain pending for independent adjudication by the court.  Unless
otherwise specified in the order, a dismissal under this paragraph is without prejudice.

FED. R. CIV. P. 41(a).

substantive, distinction . . . . [R]egardless [of] whether the patent claims were dismissed without prejudice or extinguished by amendment, the effect is the same. The parties were left in the same legal position with respect to the patent claims as if they had never been filed.

Nilssen, 203 F.3d at 784-85. The court further stated that "[t]he fact that the dismissal of the [plaintiff's] case was without prejudice is ultimately what matters." Id. at 785. Had the dismissal been with prejudice, the court asserted, it would not have been divested of jurisdiction to review the district court's ruling regarding the nonpatent claims because "dismissal of a claim with prejudice operate[s] as an adjudication . . . on the merits." Id.

Thus, under Federal Circuit precedent, the key inquiry in this case is whether the dismissal of the patent claims was with or without prejudice. Here, the district court bifurcated the claims, and the nonpatent claims were to be tried first followed by the patent claims. After the trial on the nonpatent claims, Logan moved to dismiss his patent infringement claims with prejudice conditioned upon the simultaneous dismissal of HoneyBaked's counterclaims for declaratory judgment of invalidity, unenforceability, and non-infringement of Logan's patents. The district court dismissed the patent infringement claims. However, it did not state that the dismissal was with prejudice. Under Fed. R. Civ. P. 41(a)(2),[4] if a district court's order of dismissal does not specify whether the dismissal is with or without prejudice, then the dismissal is considered to be without prejudice. FED. R. CIV. P. 41(a)(2).

Moreover, in the district court's April 19, 2000, memorandum ruling, in which it granted judgment as a matter of law in favor of HoneyBaked on the issue of fraud damages, the court

---

[4]Though the voluntary dismissal of the patent claims in this case may be technically characterized as an amendment under Fed. R. Civ. P. 15, we will analyze the issue of whether the dismissal was with or without prejudice under Rule 41(a) in accordance with Nilssen.

9

expressly stated that Logan was free to pursue his patent infringement claims. Thus, it was the court's understanding, at least at that time, that it had dismissed the patent infringement claims and counterclaims without prejudice.

On May 17, 2000, one day after Logan filed its notice of appeal to this Court, the district court attempted, in an order, to correct its earlier statement that Logan could pursue his patent infringement claims by stating that its dismissal of those claims had been with prejudice. However, because Logan had already filed his notice of appeal, the district court was without jurisdiction to issue the May 17th order. See Rutherford v. Harris County, Tex., 197 F.3d 173,189-90 (5th Cir. 1999). "A district court loses all jurisdiction over matters brought to the court of appeals upon the filing of a notice of appeal. . . . Once 'an appeal is taken, the district court is divested of jurisdiction except to take action in aid of the appeal until the case is remanded to it by the appellate court, or to correct clerical errors under Rule 60(a)."[5] Id. (quoting Travelers Ins. Co. v. Lileberg Enters., Inc., 38 F.3d 1404, 1407 n.3 (5th Cir. 1994)).

In this case, the district court was without jurisdiction to correct its earlier dismissal of the patent infringement claims. The court had obviously misunderstood the nature of the dismissal, as it indicated in the April 19th memorandum ruling that Logan was free to pursue his patent infringement claims. This misunderstanding undercuts any notion that the court's May 17th order correcting its previous dismissal of the patent infringement claims was clerical in nature. Rather, the correction was substantive and thus outside of the scope of Rule 60(a). See Rutherford, 197 F.3d

[5]Rule 60(a) permits district courts, during the pendency of an appeal, to correct clerical mistakes "in judgments, orders or other parts of the record and errors therein arising from oversight or omission . . . before the appeal is docketed in the appellate court, and thereafter while the appeal is pending . . . with leave of the appellate court." FED. R. CIV. P. 60.

10

at 190 ("The failure of the district court to make findings and to award back pay or prejudgement interest was not clerical in nature because correction of an error in substantive judgment is outside the reach of Rule 60(a).").

Because the district court was without jurisdiction to enter the May 17th order and because the correction made therein was not clerical but substantive, we find that the dismissal of the patent claims was without prejudice. Accordingly, the Federal Circuit's precedent holding that it lacks jurisdiction over non-patent claims where patent claims are dismissed without prejudice from complaints containing multiple claims is applicable in this case. Thus, we conclude that jurisdiction is proper in this Court, not in the Federal Circuit.

The Federal Circuit's order asserting jurisdiction over this appeal distinguishes Gronholz on the basis that it did not involve the circumstance where the patent claims were dismissed after a trial on the nonpatent claims. However, we do not find the timing of the dismissal a sufficient basis for the distinction. Because the patent claims were dismissed without prejudice, which is the determinative factor under Federal Circuit precedent, the parties in this case are "left in the same legal position with respect to the patent claims as if they had never been filed." Nilssen, 203 F.3d at 784-85. Furthermore, there is no reason for the Federal Circuit to exercise jurisdiction in this case. The patent claims are no longer present, and patent law issues do not permeate the other claims that were tried. To find that the Federal Circuit has jurisdiction would be, in our view, expanding its jurisdiction. Accordingly, we find that we have jurisdiction over this appeal.

II.    Fraud Liability and Fraud Damages

    A.    The District Court's Denial of Judgment as a Matter of Law Regarding Fraud Liability

11

In its cross-appeal, HoneyBaked argues that the district court erred in upholding the jury's finding that it fraudulently induced Logan to enter into the license agreement.[6] It argues that there is no credible evidence supporting the jury's finding on this issue. According to HoneyBaked, to establish fraud in the inducement, Logan had to establish that his principal cause for entering into the license agreement was the expectation that he would receive a stream of royalty payments and that HoneyBaked was aware of this fact. HoneyBaked points out that the license agreement does not contain a minimum sales or royalty requirement. In fact, it asserts, Logan agreed to delete any such explicit language.

With respect to HoneyBaked's motion for judgment as a matter of law on the issue of fraudulent inducement, the district court stated:

> It is not this court's function to resolve the issues of fact. Plaintiff presented evidence such that a reasonable person could infer that fraud was utilized by defendants. This court cannot be called upon to upset a factual finding by the jury that is supported by evidence. Thus, defendant's motion for judgment as a matter of law as to the jury's factual finding that plaintiff was induced into the license agreement by fraud shall be denied.

We review a district court's denial of a motion for judgment as a matter of law de novo. Hampton v. Dillard Dep't Stores, Inc., 247 F.3d 1091, 1099 (5th Cir. 2001). "A party is entitled to judgment as a matter of law 'only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position.'" Id. (quoting Tyler v. RE/MAX Mountain States, Inc., 232 F.3d 808, 812 (10th Cir. 2000)). We do not "weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury. Judgment as a matter of law is appropriate . . . if there is no legally sufficient evidentiary basis for a claim under the controlling

---

[6]We address this issue first because, if the district court erred in upholding the jury's finding of fraud, the other issues regarding the fraud damages award would be moot.

law." Id. (quoting Brown v. Gray, 227 F.3d 1278, 1285 (10th Cir. 2000)). Furthermore, we view the evidence and inferences drawn therefrom in the non-moving party's favor. Id.

In Louisiana, "[f]raud is a misrepresentation or suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." LA. CIV. CODE art. 1953. However, fraud will "not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill." LA CIV. CODE art. 1954.

After reviewing the record, we agree with the district court that there was sufficient evidence for a reasonable person to infer that HoneyBaked fraudulently induced Logan to enter into the license agreement notwithstanding HoneyBaked's argument that Logan agreed to delete language concerning a minimum sales or royalty requirement. Logan offered evidence that while negotiating with Logan on the license agreement, HoneyBaked was ordering its sellers not to sell any meat products that were cut using Logan's spiral slicing method. Under the license agreement, HoneyBaked's liability to Logan for royalty payments was effective November 15, 1997. Craig Kurz ("Kurz"), who was the secretary and corporate officer of HoneyBaked Foods, Inc., as well as a ten percent owner of the company, sent a memo, dated November 4, 1997, to all personnel directing store managers to locate various equipment necessary to produce spiral sliced turkey breasts and to place the items in a "secure place." The memo also stated that district managers would later collect the equipment. Kurz testified that though he drafted this document specifically for Honey Baked Ham Company of Ohio, he faxed it to his co-workers at HoneyBaked Foods, Inc. Kurz also admitted in his testimony that by November 15, 1997, HoneyBaked Foods, Inc., had pulled every pound of meat products covered by the license agreement with Logan. Approximately one month after circulating the November 4th

13

memo, Kurz signed the license agreement with Logan.  Kurz admitted in his testimony that when he signed the agreement, he knew that there would be no royalties from November 15, 1997, forward.

Also, Scott Bower ("Bower") of Honey Baked Ham Company of Georgia sent a memo, dated November 14, 1997, to store management teams, stating in part, "Effective close of business Saturday, November 15th, we should discontinue selling any "**spiral sliced**" turkey breasts over the counter.  If you have unsliced turkeys in inventory, you may spiral slice them and use them for sandwiches, but not for over the counter sales."  Charles Bengochea, who was the vice president of retail operations for Honey Baked Ham Company of Georgia in 1997, testified that Bower reported to him and that he "stand[s] by the memo."  Honey Baked Ham Company of Georgia signed the license agreement with Logan on December 1, 1997.

Considering the entire record, we cannot conclude that the jury's finding that HoneyBaked fraudulently induced Logan to enter into the license is unsupported.

B.      The District Court's Grant of Judgment as a Matter of Law Regarding Fraud Damages

1.      Whether HoneyBaked's Post-Trial Motion For Judgment as a Matter of Law Was Properly Before the District Court

Logan argues that the district court erred in considering HoneyBaked's motion for judgment as a matter of law regarding fraud damages.  He asserts that HoneyBaked failed to move the district court to dismiss his claim for fraud damages prior to submitting the case to the jury.  He points out that post-trial motions for judgment as a matter of law are only permissible as renewals of motions made on the same basis before the submission of the case to the jury.

HoneyBaked responds that it properly preserved its arguments regarding fraud damages.  It

14

points out that it moved for judgment as a matter of law at the close of Logan's case and at the close of all of the evidence and that the district court denied those motions. Moreover, it asserts that the district court only referred to Logan's rescission claim in disposing of those motions because Logan had only pled rescission as a remedy for the vice of consent and never sought damages.

The district court found that HoneyBaked moved for a directed verdict on all questions of liability prior to the submission of the case to the jury. However, the court noted that HoneyBaked did not specifically move for a dismissal of Logan's claim for damages due to fraud because of insufficiency of the evidence. The court found this fact "irrelevant" because Logan "moved on all questions of liability" and "[d]amages are an inherent part of liability." Thus, the court found that HoneyBaked's post-trial motion for judgment as a matter of law was properly before it.

Rule 50(a)(1) of the Federal Rules of Civil Procedure provides:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

FED. R. CIV. P. 50(a)(1). A motion for judgment as a matter of law that was denied at the close of the evidence may be renewed after the trial under Rule 50(b). See FED. R. CIV. P. 50(b). "It is well established that to preserve the right to file a Rule 50(b) motion the moving party must first request JML [or judgment as a matter of law] at the close of all evidence." Taylor Publ'g Co. v. Jostens, Inc., 216 F.3d 465, 471 (5th Cir. 2000). Instead of insisting that parties strictly comply with this procedural requisite, we "'approach[ ] this requirement with a liberal spirit.'" Id. (quoting Alcatel USA, Inc. v. DGI Tech. Inc., 166 F.3d 772, 781 (5th Cir. 1999)). Thus, we have excused technical

15

noncompliance with Rule 50(b) where the motion was not perfectly timed with respect to the close of the evidence and the submission of the case to the jury. See id. at 472-73.

Viewing HoneyBaked's motion with the "liberal spirit," with which we assess compliance with the requirements of Rule 50(b) motions, we agree with the district court and find that HoneyBaked adequately preserved the issue of fraud damages in its motions for judgment as a matter of law before the case was submitted to the jury. At the close of Logan's case, HoneyBaked moved under Fed. R. Civ. P. 50 for the "dismissal of all counts of the allegation of the complaint." At the close of all of the evidence, HoneyBaked renewed its Rule 50 motion. As the district court noted, HoneyBaked moved under Rule 50 on all questions of liability. All forms of damages were inherent in this request. We decline to adopt an unduly burdensome view of Rule 50 that would require litigants to detail every aspect of a case where, as in this case, a general, all encompassing statement will suffice. Furthermore, Logan did not specifically plead and seek damages for rescission due to fraud. Thus, HoneyBaked should not be penalized for not specifically referencing such damages in its motion for judgment as a matter of law.

2.      Whether the District Court Properly Concluded That Rescission Was the Only Appropriate Remedy and That Logan Had Not Proven Fraud Damages

Logan argues that the district court erred in granting HoneyBaked's motion for judgment as a matter of law and vacating the jury's fraud damages award because Louisiana law provides for such damages and he proved those damages under the applicable statutory provision. Specifically, he claims that Louisiana Civil Code Article 1958, which pertains to rescission because of fraud, and the comments thereto indicate that a fraud victim is entitled to recover the profits of which he has been deprived. He also avers that whether such profits have been proven is a question of fact for the jury

16

to decide and states that in his case the jury did so decide. He asserts that there is sufficient evidence in the record for the jury to have determined his lost profits, including evidence of HoneyBaked's past sales of spiral sliced boneless turkey breasts and evidence of the royalties that Logan would have received based on those past sales. Moreover, he argues that whether rescission alone was an adequate remedy or whether damages in addition to rescission were warranted was a question of fact for the jury and that the jury's finding on this issue should not have been disturbed by the district court. According to Logan, the district court's inquiry should have extended only far enough to determine whether the jury's finding was supported by the record.

Additionally, Logan notes that this case implicates policy considerations. He observes that, if a defrauded party's only remedy is rescission, then there is an incentive for the commission of fraud. There would, in his view, be nothing to lose and much to gain through the commission of fraud.

While conceding that Louisiana Civil Code Article 1958 permits the recovery of damages for rescission due to fraud in appropriate instances, HoneyBaked argues that such damages are not warranted in this case. HoneyBaked again asserts that Logan only pled rescission as the remedy for fraud in the inducement. Furthermore, it avers that rescission is the only appropriate remedy because it made Logan whole. HoneyBaked observes that once the license agreement was voided, Logan was free to pursue his patent infringement case, but he voluntarily dismissed it. Thus, HoneyBaked argues that Logan has suffered no damages as a result of entering the license agreement.

Moreover, HoneyBaked maintains that the jury's award for fraud damages is not supported by the record. According to HoneyBaked, Logan never presented evidence regarding fraud damages. It claims that it was only during closing arguments that Logan's counsel presented an analysis of Logan's damages. HoneyBaked points out, however, that counsel's analysis pertained to Logan's

17

breach of contract claim only, which the jury rejected. Furthermore, HoneyBaked notes that the license agreement did not require HoneyBaked to sell any amount of the product.

In finding that Logan was not entitled to damages, the district court stated that Logan had not sought damages under Louisiana Civil Code Article 1958 in his complaint and that he did not prove such damages at trial. The court noted that the license agreement did not preclude Logan from negotiating agreements from other parties wishing to use his patent. Also, the court observed that Logan was returned to his position prior to the patent suit and the license agreement. As for Logan's policy argument the court stated: "[P]laintiff strongly urges that by not awarding the damages 'lost' by the benefit of the bargain, defendant is rewarded for a failed attempt at fraud. However, this 'benefit' to the defendant is not a proven *damage* to the plaintiff." Moreover, the court pointed out that Logan was free to seek recourse against HoneyBaked with his patent infringement claims.

We agree with the district court that fraud damages are inappropriate in this case. Louisiana Civil Code Article 1958 states: "The party against whom rescission is granted because of fraud is liable for damages and attorney fees." Thus, clearly damages are permissible in this case. However, after carefully reviewing the record, including Logan's Amended Complaint and his Pre-trial Statement, we conclude that Logan never sought damages for fraud in the inducement. Instead, he only sought and pled rescission as an alternative remedy should the jury find for HoneyBaked on the breach of contract claim. In his Pre-Trial Statement, Logan stated:

1.  For Defendants' breaches of contract, an award equal to the amount of royalties that Logan would have received if Defendants had in the past continued to make and offer for sale products covered by Logan's Reissued Patent, would in the future receive if Defendants were to make and offer products covered by Logan's Reissued Patent for sale, and/or for judgment dissolving the Non-Exclusive Patent License and Cross-License Agreement;

18

2.       Alternatively, for judgment declaring the Non-Exclusive Patent License and
         Cross-License Agreement void ab initio for being illusory and/or due to vices
         in Logan's consent, arising out legally cognizable error and/or fraud.

Because he did not seek fraud damages, not surprisingly, Logan did not present any evidence at trial that was specifically linked to alleged losses resulting from HoneyBaked's fraud. As the district court noted, he did not present evidence that he had spent money in reliance on the license agreement or demonstrate that he was otherwise financially harmed.

HoneyBaked claims that Logan never sought damages for fraud as a vice of consent and that he therefore waived such damages. We note, however, that our holding is not that Logan waived any claim for fraud damages by failing to plead such damages.[7] Rather, we point out Logan's failure to seek and plead fraud damages to underscore his failure to present any evidence related to fraud damages. None of the evidence that Logan points to in this appeal as supporting fraud damages convinces us that he is entitled to such damages. In fact, he has merely offered post-trial explanations of evidence that he actually offered to prove damages for breach of contract. None of this evidence goes to fraud damages.

Also, we find Logan's policy argument unpersuasive. The remedy that he pled, rescission, would have allowed him to pursue his patent infringement claims. Under the unique circumstances of this case, the opportunity to prevail on these claims would have safeguarded against the possibility that HoneyBaked would benefit from any fraudulent conduct. Moreover, as the district court stated, any benefit to HoneyBaked in the commission of fraud does not translate into proof of damages on the part of Logan.

---

[7]Because we agree with the district court that damages for rescission due to fraud are unsupported by evidence and thus inappropriate in this case, we pretermit the waiver issue.

19

We note that it was the attempt to settle Logan's original patent infringement claims that led to the license agreement between the parties. The rescission remedy permitted Logan to resume litigation with those claims. In fact, the outcome of the present case was to determine the necessity of a subsequent trial on the patent claims. However, Logan voluntarily chose to dismiss those claims. Logan will not be permitted to collect damages that were inappropriately awarded by the jury because he elected not to move forward with the patent claims.

Accordingly, we find that the district court did not err in vacating the jury's award of fraud damages.[8]

III.    Lanham Act Claims for False Advertising

      A.    The District Court's Denial of Judgment as a Matter of Law Regarding Lanham Act Violations

            1.    Whether Logan Had Standing to Sue HoneyBaked Under the Lanham Act for False Advertising

HoneyBaked argues that Logan lacked standing to sue it under the Lanham Act for false advertising because he failed to establish that he was a competitor of HoneyBaked and to allege that he suffered a competitive injury. This Court recently adopted a five-factor test for determining statutory or "prudential" standing under the Lanham Act. See Proctor & Gamble Co. v. Amway Corp., 242 F.3d 539, 562-63 (5th Cir. 2001).[9] In Proctor & Gamble, this Court held that Proctor &

---

[8]Because we find that the district court did not err in vacating the fraud damages award, we pretermit the issue of whether the court erred in finding that Logan was not entitled to prejudgment interest on the fraud damages.

[9]Standing has both constitutional and prudential aspects. Proctor & Gamble, 242 F.3d at 560. To satisfy the constitutional standing requirement, "a plaintiff must show (1) an injury in fact (2) that is fairly traceable to the actions of the defendant and (3) that likely will be redressed by a favorable decision." Id. Prudential standing requirements are:

Gamble lacked standing to bring a Lanham Act claim against Amway based on Amway's alleged misrepresentations to its distributors regarding its allegedly illegal pyramid scheme. Id. at 560. This Court adopted the five-factor test set forth in Conte Brothers Automotive, Inc. v. Quaker State-Slick 50, Inc., 165 F.3d 221, 229 (3rd Cir. 1998), for determining whether a plaintiff has prudential standing under the Lanham Act. Id. at 562. The factors to be considered are:

> (1) the nature of the plaintiff's alleged injury: Is the injury 'of a type that Congress sought to redress in providing a private remedy for violations of the antitrust laws'?; (2) the directness or indirectness of the asserted injury; (3) the proximity or remoteness of the party to the alleged injurious conduct; (4) the speculativeness of the damages claim; and (5) the risk of duplicative damages or complexity in apportioning damages.

Applying those factors, this Court in Proctor & Gamble found standing to be lacking. Id. at 564. Regarding the first factor, we stated that it is unlikely that Congress intended to address fraudulent misrepresentations of a company to potential employees in an effort to convince them to work for and buy products from the company. Id. at 563. We determined that the second factor indicated that Proctor & Gamble lacked standing because the case did not involve one competitor directly injuring another by making false statements about its own goods and thus influencing customers to buy its product instead of the competitor's product. Id. We found that standing was also undercut by the third factor. Id. We noted that although the distributors, "who [were] more

---

> [j]udicially created limits [that] concern whether a plaintiff's grievance arguably falls within the zone of interests protected by the statutory provision invoked in the suit, whether the complaint raises abstract questions or a generalized grievance more properly addressed by the legislative branch, and whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.

Id. In Proctor & Gamble, this Court found that Congress did not intend to abrogate prudential standing principles with respect to the Lanham Act. Id. at 560-61.

immediate to the injury than [was] P&G," probably lacked standing under the Lanham Act, they could probably sue Amway for fraud. Id. at 563-64. Regarding the fourth factor, we observed that Proctor & Gamble had not even attempted to offer evidence as to any lost profits resulting from Amyway's alleged pyramid scheme. Id. at 564. With respect to the fifth factor, we stated that "[n]ot only could every competitor in the market sue Amway if P&G is allowed standing here, but there would be nothing to stop other companies not in direct competition with Amway from suing based on harm suffered by having potential workers fraudulently induced away." Id.

In this case, the first and fifth factors weigh in Logan's favor. Congress obviously intended to address literally false advertising under the Lanham Act. See 15 U.S.C. § 1125(a). Also, Logan appears to be the only plaintiff who would bring a Lanham Act false advertising claim against HoneyBaked based on advertisements involving meat sliced using a method for which he holds the patent.

HoneyBaked's argument that it was not one of Logan's competitors seems to relate to the second, third, and fourth factors. The second and third factors indicate that Logan has standing. The asserted injury in this case is that HoneyBaked's literally false advertising about its own goods influenced its customers to buy its product instead of Logan's product. HoneyBaked's argument that it is not one of Logan's competitors is unavailing. Our inquiry into Logan's status as one of HoneyBaked's competitors is not as stringent as it would be were the issue related to liability or damages instead of prudential standing. Nevertheless, it is clear that Logan has a direct business interest in the sales of spiral sliced meats. Moreover, his ability to license his spiral slicing method to others may have been directly affected by HoneyBaked's false advertising offering spiral sliced products.

22

The fourth factor does not undercut standing in this case although the jury found that Logan had not established any actual losses.  Logan presented evidence regarding HoneyBaked's profits allegedly resulting from the sale of falsely advertised products, and the jury apparently awarded Logan some of these profits.

Accordingly, we find that Logan had standing to bring the Lanham Act claim for false advertising against HoneyBaked.

2.      Whether Logan Proved the Elements Necessary to Establish a Lanham Act Violation for False Advertising

The jury found that Logan had stated a Lanham Act claim under 15 U.S.C. § 1125(a)(1)(A)[10] for literally false advertising and that HoneyBaked  willfully violated the Lanham Act.  In its cross-appeal, HoneyBaked challenges the jury's finding that it willfully engaged in false advertising.  It argues that the finding is against the weight of the evidence.  It claims that none of the types of advertising that Logan complained of was false or affected Logan.  Additionally, HoneyBaked emphasizes that its advertising did not mislead any customers and that none of them relied on the

---

[10]15 U.S.C. § 1125(a)(1)(A) provides:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

23

advertising in making their purchasing decision. Moreover, it argues that the jury's finding of "willfulness" is contrary to the definition of "willful" as set forth in the district court's instructions. HoneyBaked insists that Logan did not establish that he was a victim of HoneyBaked's advertising or that HoneyBaked had targeted him in any way. It claims that, except in a few locations, Logan and HoneyBaked were not even competitors.

The district court found that the jury's determination that HoneyBaked had willfully engaged in false advertising is supported by the record. The court declined to disturb the jury's finding, stating, "This court cannot be called upon to upset a factual finding by the jury that is supported by the evidence."

A plaintiff must make the following showing to establish a claim under the false advertising prong of the Lanham Act:

> (1) that the defendant made a false statement of fact about its product in a commercial advertisement; (2) that the statement actually deceived or has a tendency to deceive a substantial segment of its audience; (3) the deception is likely to influence the purchasing decision; (4) the defendant caused the false statement to enter interstate commerce; and (5) the plaintiff[] ha[s] been or [is] likely to be injured as a result.

Blue Dane Simmental Corp. v. Am. Simmental Ass'n, 178 F.3d 1035, 1042 (5th Cir. 1999); see also King v. Ames, 179 F.3d 370, 373-74 (5th Cir. 1999).

The jury heard evidence about five types of allegedly false advertising by HoneyBaked: packaging, catalog photos, menu boards, websites, and the corporate logo. HoneyBaked concedes in its brief to this Court that from November 1997 until mid-1998, even though it had ceased selling spiral sliced meat products, (1) its packaging for mail ordered turkey breasts "mentioned" spiral slicing, (2) it continued to use catalog photos of spiral sliced turkey breasts, (3) its websites contained photos of spiral sliced turkey breasts, and (4) its corporate identity trademark included a drawing of

24

a spiral sliced turkey breast. Viewing the evidence in the light most favorable to Logan and avoiding the re-weighing of evidence, as we are required to do, we find that the showing of these inaccuracies was sufficient evidence for the jury to conclude that HoneyBaked made a false statement of fact about its product in a commercial advertisement.

Because Logan established that HoneyBaked made literally false statements, HoneyBaked's argument that it did not mislead its customers and that the advertising did not affect their purchasing decision is inconsequential. See Pizza Hut, Inc. v. Papa John's Int'l, Inc., 227 F.3d 489, 497 (5th Cir. 2000). In Pizza Hut, a case involving a false advertising claim under the Lanham Act, we stated that "when the statements of fact at issue are shown to be literally false, the plaintiff need not introduce evidence on the issue of the impact the statements had on consumers . . . . In such a circumstance, the court will assume that the statements actually misled consumers." Id.

We also find that there was sufficient evidence for the jury to find that Logan had satisfied the injury element of his false advertising claim. HoneyBaked argues that Logan did not show that he was injured or likely to be injured because of HoneyBaked's false advertising. It points to the jury's finding that Logan failed to establish his losses as an indication that he also failed to establish the injury element of his false advertising claim. However, this argument conflates the injury requirement for the false advertising claim with the requirement that he prove his actual damages in order to obtain relief. See Balance Dynamics Corp. v. Schmitt Indus., 204 F.3d 683, 689 (6th Cir. 2000) (noting the importance of "clearly distinguishing the elements necessary to prove a breach of the Lanham Act from the elements necessary to justify a certain remedy for that breach"). While Logan did not prove damages with particularity sufficient to prompt the jury to find that he had established actual losses because of the false advertising, there was sufficient evidence from which the jury could have inferred

25

that he was in some way injured. As we stated in our standing analysis, Logan has a direct business interest in the sales of spiral sliced meats, and his ability to license his spiral slicing method to others may have been directly affected by HoneyBaked's false advertising offering spiral sliced meat products. The jury was well aware of this, as Logan's claims against HoneyBaked were based on a license agreement regarding Logan's patented method for spirally slicing meat products. The jury could have inferred that the parties were competitors and that HoneyBaked's false advertising injured Logan.

B.      The District Court's Grant of Judgment as a Matter of Law Regarding Damages for Lanham Act Violations

Logan argues that he is entitled to HoneyBaked's profits from the sale of falsely advertised turkey breasts. He claims that he is entitled to such profits under 15 U.S.C. §1117(a).[11] Furthermore, he claims that, under this statutory provision, he was merely required to establish HoneyBaked's sales of the falsely advertised product while HoneyBaked was required to prove all elements of costs to be deducted from those sales. He asserts that he satisfied the requirements of 15 U.S.C. § 1117(a) by proving HoneyBaked's sales of falsely advertised turkey breasts, and he points out that the jury's award was only a fraction of the amount that he proved, which was approximately $2,200,000. Moreover, he claims that the district court erroneously concluded that it was his burden to prove that HoneyBaked's sales were the result of the false advertising. Instead, he avers that it was HoneyBaked's burden to prove that the profits from the sale of the falsely advertised goods were not the result of the false advertising.

---

[11]15 U.S.C. § 1117(a) provides for the following damages for a violation under 15 U.S.C. § 1125(a) for false advertising: "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."

26

Regarding the sufficiency of the evidence, Logan asserts that there was evidence from which the jury could have reasonably inferred that some of HoneyBaked's profits were the result of its false advertising. He also argues that there was evidence that he was adversely impacted by the false advertising in that his sales dropped substantially when HoneyBaked began advertising and selling spiral sliced boneless turkey breasts.

HoneyBaked makes several arguments in support of the district court's grant of judgment as matter of law in its favor on the issue of damages for Lanham Act violations. First, it claims that Logan lacked standing to pursue any Lanham Act claims because he did not suffer an injury in fact.[12] Second, HoneyBaked contends that the jury's award was an improper penalty because it also found that Logan did not suffer any injury from HoneyBaked's violations of the Lanham Act. It points out that Logan did not present any evidence that he had lost any sales because of HoneyBaked's advertising, that the advertisements were material to consumers, or that consumers were misled by the advertisements. Furthermore, it avers that Logan is not entitled to HoneyBaked's profits because he suffered no losses due to the advertisements. Third, HoneyBaked argues that Logan failed to satisfy the elements for a Lanham Act claim.[13]

Citing Texas Pig Stands, Inc. v. Hard Rock Café International, Inc., 966 F.2d 956 (5th Cir. 1992) (per curiam) ("Texas Pig Stands II"),[14] the district court found that Logan had failed to present

---

[12]We have already determined that Logan had standing to bring a Lanham Act claim for false advertising against HoneyBaked. See supra Section III.A.1.

[13]We have already determined that the jury's finding that Logan satisfied the necessary elements for his Lanham Act claim for false advertising against HoneyBaked is supported by the record. See supra Section III.A.2.

[14]Texas Pigs II is this Court's per curiam opinion on the suggestion for rehearing en banc. This Court's initial decision in that case is Texas Pig Stands, Inc. v. Hard Rock Café International,

27

evidence demonstrating that any of HoneyBaked's profits resulted from its violation of the Lanham Act. In Texas Pig Stands II, we upheld the district court's ruling that the plaintiff was not entitled to the defendant's profits because the plaintiff had failed to present evidence "showing that any of Defendant's profits *were the result of its infringement of the mark.*" 966 F.2d at 957 (emphasis in original). Relying on Texas Pig Stands II, the district court in this case stated that it was certain that HoneyBaked would have sold the same quantity of turkey breasts regardless of the slicing method. Furthermore, the court pointed out that HoneyBaked had presented evidence that consumers did not care how the meat was sliced. The district court noted that Texas Pig Stands II involved trademark infringement, see Texas Pig Stands II, 966 F.2d at 957-58, whereas this case involves willful patent infringement. However, the court found that the principles espoused in Texas Pig Stands II are applicable in this case.

We agree with the district court that the principles of Texas Pig Stands II are applicable in this case and extend those principles to cases involving false advertising under the Lanham Act. As does this case, Texas Pig Stands II involved profits sought under 15 U.S.C. § 1117(a). However, unlike the present case, which involves false advertising, the Lanham Act claim in Texas Pig Stands II was based on trademark infringement. This distinction does not render this Court's holding regarding the proof necessary for a plaintiff to obtain a defendant's profits under § 1117(a) inapplicable.

Additionally, we find a recent decision by the Sixth Circuit persuasive on this issue. See Balance Dynamics, 204 F.3d at 683. There, the plaintiff argued that because it could establish that the defendant knowingly and willfully made false statements, it was entitled to the defendant's profits.

Inc., 951 F.2d 684 (1992).

28

Id. at 695. The magistrate judge had rejected the plaintiff's argument and found that it was entitled to the defendant's profits only if it could show that the defendant gained additional sales due to the advertisement, or that the plaintiff lost sales, or was forced to lower the price of its own product. Id. The magistrate judge pointed out that the Lanham Act states that an award of damages is subject to the principles of equity and should not impose a penalty but rather should be for the purpose of compensation.[15] Id. Adopting the magistrate judge's reasoning, the court held that "unless there is some proof that plaintiff lost sales or profits, or that defendant gained them, the principles of equity do not warrant an award of defendant's profits." Id.

We agree with the Sixth Circuit in Balance Dynamics, and accordingly, we hold that where a plaintiff who has brought a Lanham Act claim for false advertising has failed to present evidence that the defendant benefitted from the alleged false advertising, the plaintiff will not be permitted to recover any of the defendant's profits under 15 U.S.C. § 1117(a).

After carefully reviewing the record, we find no error in the district court's determination that Logan failed to present any evidence that HoneyBaked's profits were attributable to false advertising. Indeed, on appeal, Logan has not pointed to any evidence in the record demonstrating that consumers purchased HoneyBaked's product because of its false advertising that the meat was spirally sliced. Instead, he devotes much of his briefing to attempting to distinguish Texas Pig Stands II and asserting that HoneyBaked had the burden of proving that its profits were not the result of the false advertising.

      C.     The District Court's Denial of Injunctive Relief Against Future Lanham Act Violations

---

[15]Section 1117(a) states that the damages provided thereunder are "subject to the principles of equity" and "shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a).

Logan argues that he was entitled to an injunction to prevent further violations of the Lanham Act by HoneyBaked. According to Logan, the district court misunderstood the scope of his requested injunction. In Logan's view, the district court's understanding was that Logan sought to enjoin HoneyBaked from using spiral sliced connotations on products that it sold which were actually spirally sliced. Instead, Logan notes, he sought an injunction to prevent HoneyBaked from using spiral sliced connotations with respect to products that have not been spiral sliced.

We review the district court's denial of Logan's request for injunctive relief for abuse of discretion. See Peaches Entm't. Corp. v. Entm't. Repertoire Assoc., 62 F.3d 690, 693 (5th Cir. 1995). Logan has wholly failed to demonstrate that the district court abused its discretion in denying injunctive relief. In order to obtain permanent injunctive relief against future violations of 15 U.S.C. § 1125(a), a plaintiff must "demonstrate that a commercial advertisement or promotion is either literally false or that the advertisement is likely to mislead and confuse consumers" *and* "that it will suffer irreparable harm if the injunction is not granted." Seven-Up v. Coca-Cola Co., 86 F.3d 1379, 1390 (5th Cir. 1996).

In Seven-Up, this Court found that there was no evidence indicating that the plaintiff would suffer irreparable harm if an injunction was not granted even though the district court had entered judgment on the jury's finding that the defendant's advertising was false and misleading and was likely to deceive. Id. at 1389-90. We noted that the defendant had ceased using the sales presentation that was the subject of the plaintiff's Lanham Act claim for false advertising and that the significance of some of the data contained in the presentation materials had become questionable. Id. at 1390. Thus, we upheld the magistrate judge's denial of the plaintiff's request for permanent injunctive relief. Id.

30

In this case, Logan has failed to establish that it will suffer irreparable harm absent injunctive relief. It points to no evidence that HoneyBaked continues to make references to spiral sliced meat products in its advertising or that it will in the future. Accordingly, we find that the district court did not err in denying injunctive relief.

CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.

AFFIRMED.