**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 01-60803
_____

LINDA BRUNE,

Plaintiff-Appellee,

versus

CITY OF JACKSON, MISSISSIPPI

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
(3:00-CV-219)
_____

July 17, 2002

Before HIGGINBOTHAM, WIENER, and BENAVIDES, Circuit Judges.

PER CURIAM[*]:

Defendant-Appellant City of Jackson, Mississippi ("the City")
appeals a judgment in favor of Plaintiff-Appellee Linda Brune for
violation of Title VII of the Civil Rights Act of 1964, codified at
42 U.S.C. § 2000e et seq. ("Title VII"). We affirm the judgment.

We review only the facts pertinent to the issues addressed in
this appeal. Brune, a white female, was employed by the City as a
deputy clerk, providing administrative support to the City Council

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

from October 1996 through August 1999.  In March 1998, Brune and other City employees were interviewed by the Federal Bureau of Investigation ("FBI") in connection with its investigation of bribery charges against City Councilman Robert Williams.  In May 1998, Brune was again interviewed by the FBI, this time in connection with its investigation into extortion charges against City Councilman Louis Armstrong.

Also in March 1998, Brune's job category was reclassified, and with the reclassification came an increase in salary.  A black female co-worker in the same job category as Brune, Consuellia Michael, began to receive her increased pay in May 1998, but Brune did not.[1]  Brune complained of this to several members of the City Council, and wrote four memoranda to Councilman Armstrong, the president of the City Council, requesting that she receive her raise.  In late July 1998, after threatening to file a writ of mandamus against Armstrong, she finally began to receive her pay increase, and received the back pay she was owed as well.

Late in March 1998, the City Council confirmed and pre-paid the cost of Brune's attendance at the forthcoming annual meeting of the Mississippi Municipal Association ("MMA") in Biloxi, Mississippi.  Attendance at the MMA meeting enables attendees to earn "points" towards achieving the designation of certified

---

[1] There is no indication that Consuellia Michael was interviewed by the FBI during its investigations of councilmen Williams and Armstrong.

municipal clerk, thereby advancing their careers.  After Brune cooperated in the FBI interviews that spring, Councilman Armstrong canceled her reservation for the MMA.  Eddie Jean Carr, the other black female who had been interviewed by the FBI and whose attendance at the MMA had been confirmed in March, was the City Clerk, not a deputy clerk like Brune.  It was generally understood that the City Clerk always attends the annual meeting of the MMA. In any event, Carr's reservation was not canceled after her interview with the FBI.[2]

In 1999, Brune resigned her position as deputy clerk, allegedly because she could no longer tolerate the stress of working in such a racially discriminatory environment.  Before the last day of her employment, Brune contacted the City's Risk Management Department concerning the continuation of her health insurance benefits, but received no reply.  Only after contacting the manager of Risk Management a total of four times was she able to obtain her COBRA notice, 72 days late.  The jury heard conflicting testimony on whether Brune suffered any damage from this delay.

Brune filed suit against the City in March 2000, alleging violations of 42 U.S.C. §§ 1981, 1983, 1985, Title VII, the First, Fifth, and Fourteenth Amendments, and state law.  The case was set

---

[2] No deputy clerk besides Brune was scheduled to attend the MMA that year, so there was no similarly situated black deputy clerk to whose treatment Brune's could be compared.

for a jury trial in June 2001, but in May 2001, the district court ruled on the City's motion for summary judgment, granting it in part and denying it in part. The district court granted summary judgment to the City on Brune's state law claims as well as on her claims under 42 U.S.C. §§ 1981, 1983, and 1985, and the First, Fifth and Fourteenth Amendments, noting that Brune had conceded that summary judgment should be granted on all but the § 1981 claim, and that the § 1981 claim required a live § 1983 claim, which Brune no longer had.

As for Brune's Title VII claims, the district court granted summary judgment to the City on the retaliation and constructive discharge claims, holding that Brune had not engaged in a "protected activity" under Title VII (as required in a retaliation claim), and that Brune had not presented facts sufficient to show that a reasonable person in her position would feel that she had no choice but to resign (as required in a constructive discharge claim). The district court denied summary judgment to the City with respect to Brune's Title VII race discrimination claim, however, determining that there was a triable fact issue as to whether the City had proffered legitimate, non-discriminatory reasons for its treatment of Brune.

Shortly before trial, the district court permitted Brune to add a hostile work environment claim against the City. After she had presented her case in chief to the jury, however, the district court granted the City's motion for a directed verdict on Brune's

4

hostile work environment claim, and submitted only the Title VII discrimination claim to the jury. The jury found by a preponderance of the evidence that the following complaints by Brune did result from intentional racial discrimination: (1) She was paid differently from Consuellia Michael, in that she received her pay raise later than Michael did; (2) she was treated differently from similarly situated black employees after being interviewed by the FBI; (3) her authorization to attend the MMA was canceled; and (4) her COBRA notice was delayed after she terminated her employment with the City. Without itemizing the dollar amount, the jury awarded Brune damages of $50,000.[3]

The City filed a motion that it titled a motion for judgment notwithstanding the verdict, or in the alternative, for a new trial or a remittitur. In support of the motion for judgment notwithstanding the verdict, the City raised substantially the same issues that it raises before us on appeal, all of which the district court deemed to be without merit when it denied the City's motion for judgment notwithstanding the verdict. Further, the district court found that there was "sufficient evidentiary basis from the evidence presented at trial for a reasonable jury to find for Brune with regard to both liability and damages in this case," and that the jury's verdict was neither contrary to the great

_____

[3] In her trial testimony, Brune stated that she sought $250,000 in damages, $100,000 of which she ascribed to mental anguish that she alleged to have endured while she was employed as a deputy clerk for the City.

5

weight of the evidence presented at trial nor the result of passion and prejudice.  Accordingly, the district court denied the City's motion for a new trial or a remittitur.  The City filed a timely notice of appeal from the district court's orders.

We review de novo a district court's denial of a motion for judgment as a matter of law,[4] but note that when the action has been tried before a jury, such a motion is actually a challenge to the legal sufficiency of the evidence supporting the jury's verdict,[5] with the moving party entitled to judgment as a matter of law "only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position."[6]  As for a district court's denial of a motion for a new trial, we will affirm that ruling unless the moving party makes a "clear showing of an absolute absence of evidence to support the jury's verdict" and thereby indicates that "the trial court had abused its discretion in refusing to find the jury's verdict

_____

[4] Logan v. Burgers Ozark Country Cured Hams Inc., 263 F.3d 447, 455 (5th Cir. 2001).  The City's designation of its motion as a request for judgment notwithstanding the verdict is merely a formal error.  See Federal Rule of Civil Procedure 50, Advisory Committee Notes ("If a motion is denominated a motion for directed verdict or for judgment notwithstanding the verdict, the party's error is merely formal.  Such a motion should be treated as a motion for judgment as a matter of law in accordance with this rule.").

[5] Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273, 280 (5th Cir. 2002).

[6] Logan, 263 F.3d at 455 (quoting Tyler v. RE/MAX Mountain States, Inc., 232 F.3d 808, 812 (10th Cir. 2000)).

contrary to the great weight of the evidence."[7]

The City presents three core complaints on appeal: (1) the district court erred in permitting Brune's hostile work environment claim to go forward, with the result that prejudicial evidence relating to that claim was presented to the jury and improperly influenced its deliberations concerning the discrimination claim; (2) the district court erred in predetermining that, if proved, the specific claims submitted to the jury would constitute adverse employment actions and allowing them to be presented to the jury as such; and (3) Brune was allowed to have an all-white jury only through improper means, including the use of a venire that was not reflective of a cross-section of the Jackson, Mississippi community, and the acceptance by the district court of unsatisfactory race-neutral reasons proffered by Brune in response to the City's Batson challenges.[8]

We have reviewed the record on appeal, including in particular the rulings of the district court and the jury's answers to the interrogatories, as well as the applicable law set forth by the parties both in their briefs and at oral argument. As a result of

---

[7] Lane v. R.A. Sims, Jr., Inc., 241 F.3d 439, 444 (5th Cir. 2001) (quoting Whitehead v. Food Max of Miss., Inc., 163 F.3d 265, 269 (5th Cir. 1998)).

[8] The City also complains that the verdict was against the overwhelming weight of the evidence and actually represented a finding with respect to Brune's dismissed claim of retaliation, and that the judgment was excessive and against the great weight of the evidence.

this comprehensive review, we are not persuaded that any reversible error occurred or that the judgment of the court instating the jury's verdict should be disturbed.  Accordingly, the judgment of the district court is, in all respects,

AFFIRMED.