COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-315-CV

 

 

ASTORIA INDUSTRIES OF IOWA, INC.                                    APPELLANT

 

                                                   V.

 

SNF, INC. D/B/A                                                            APPELLEE

BRAND FX BODY COMPANY                                                                 

 

                                              ------------

 

            FROM
THE 17TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                OPINION
ON REHEARING

 

                                              ------------

We withdraw our opinion and
judgment of October 19, 2006 and substitute the following.  We grant in part and deny in part the motion
for rehearing filed by Astoria Industries of Iowa, Inc. (Astoria) and deny the
motion for attorney=s fees and
costs filed by SNF, Inc. d/b/a Brand FX Body Company (Brand FX).








                                       I.  INTRODUCTION

In this
interlocutory appeal, Astoria appeals from the trial court=s denial of its motions for summary judgment on Brand FX=s claims for business disparagement, false advertising, and tortious
interference with prospective business relations, among other causes of
action.  Astoria contends that we have
jurisdiction over this appeal under section 51.014(a)(6) of the civil practice
and remedies code because its motions for summary judgment were based in whole
or in part on a claim or defense arising under the First Amendment.[1]  In ten issues, Astoria complains that the
trial court improperly denied its summary judgment motions.  Brand FX disagrees that we have jurisdiction
over the appeal and urges us to dismiss it. 
We hold that we have jurisdiction over part, but not all, of the appeal
under section 51.014(a)(6).  We affirm in
part, reverse and render in part, and dismiss in part.

              II. 
BACKGROUND FACTS AND PROCEDURAL HISTORY








Astoria and Brand FX are
business competitors.  They manufacture
and sell fiberglass utility and service bodies and toppers[2]
for commercial vehicles.  Brand FX=s topper utilizes a stair-step roof line that Brand FX claims is
unique and brand-distinguishing. 
Initially, Astoria=s only
topper design had a rounded or domed roof line. 
In late 2002, however, Astoria developed a topper with a stair-step
design virtually identical to Brand FX=s topper for Cook=s Pest Control.  Astoria=s chief engineer, Randy Thole, acknowledged that Astoria developed the
stair-step design topper for Cook=s Pest Control as similar to Brand FX=s design as possible. 

Brand FX contends that
Astoria switched to the stair-step topper design to take Cook=s Pest Control=s business
from Brand FX by offering the topper for over $1000 less than the price that
Brand FX charged.  Brand FX further
contends that Astoria used illegal methods to design its stair-step topper,
including Anefariously@ obtaining Brand FX=s design drawings and using a Brand FX topper to assist Astoria in
making the mold for its replica topper. 








Thereafter, in February 2003,
Astoria began running a ADARE TO
COMPARE@ advertisement in an industry trade journal (the Advertisement).  The Advertisement ran ten times over the
course of fourteen months.  The
Advertisement begins, AWhen
choosing fiberglass utility bodies, Astoria Industries of Iowa should be
your supplier!@  Then the Advertisement compares AHigh Quality Astoria Bodies vs. Low Quality Brand X Bodies.@  Regarding the latter, the
Advertisement states, (1) ANo Engineering and built with sub-standard materials@; (2) AShort term
cost with long term expenses@; (3) ABuilt to
their standard@; and (4) A1-year warranty.@  

Brand FX contends that
Astoria=s reference to ABrand X
Bodies@ is a poorly-disguised reference to Brand FX=s business name of Brand FX Body Company.  Brand FX further contends that three of the
statements in the Advertisement are statements of fact that are demonstrably false:  (1) ANo Engineering and built with sub-standard materials@; (2) AShort term
cost with long term expenses@; and (3) ABuilt to
their standard.@  Brand FX also asserts that Astoria knew the
statements were false when it ran the ad, or at least failed to perform any
sort of investigation regarding the truthfulness of the statements.  

In late May 2003, Brand FX
notified Astoria of Brand FX=s belief that the Advertisement was defamatory and asked Astoria to
stop running it.  Astoria continued to
run the Advertisement through April 2004. 








As a result of Astoria=s conduct, Brand FX sued Astoria for business disparagement and
defamation per se, false advertising under the Lanham Act,[3]
tortious interference with prospective relations, trade dress infringement,
unfair competition, common-law misappropriation, and trade secret
misappropriation.  In five motions,
Astoria moved for traditional and/or no-evidence summary judgments on Brand FX=s business disparagement, trade dress infringement, false advertising,
tortious interference, unfair competition, and common-law misappropriation
claims.  After a hearing, the trial court
denied the motions in a single order. 
This appeal followed.  

III.  JURISDICTION

A.  Availability of Interlocutory Appeal

Because an order denying a
motion for summary judgment is interlocutory and generally not appealable,[4]
we must first determine whether we have jurisdiction over this appeal.








Astoria contends that the
trial court=s order is
appealable under section 51.014(a)(6) of the civil practice and remedies code,
because Astoria=s
no-evidence motion for summary judgment on Brand FX=s business disparagement,  false
advertising, and tortious interference claims is based on a claim or defense
arising under the Free Speech Clauses of the First Amendment and article I,
section 8 of the Texas Constitution. 
Section 51.014(a)(6) provides that a person may appeal an interlocutory
order that 

denies
a motion for summary judgment that is based in whole or in part upon a claim
against or a defense by . . . a person whose communication appears in or is
published by the electronic or print media, arising under the free speech or
free press clause of the First Amendment to the United States Constitution, or
Article I, Section 8, of the Texas Constitution[.][5]

 

Brand FX contends that section 51.014(a)(6) does
not apply here because its business disparagement, false advertising, and
tortious interference claims do not arise under the federal or state Free
Speech Clauses and because Astoria did not, and could not, raise the issue of
free speech as a defense in its no-evidence motion for summary judgment.

In its no-evidence motion for
summary judgment, Astoria expressly alleged that it was entitled to summary
judgment on Brand FX=s business
disparagement, false advertising, and tortious interference claims because
there was no evidence that the statements in the Advertisement were false,
disparaging statements of fact rather than mere statements of opinion protected
by the federal and state Free Speech Clauses. 
Specifically, Astoria asserted as follows:








Astoria is
entitled to summary judgment as a matter of law on [Brand FX=s] claims for business disparagement, false advertising under the
Lanham Act, and tortious interference with prospective business relations for
the following reasons:

1.     Astoria=s
statements in its advertisement were nondefamatory statements, or in the
alternative, statements of opinion protected under the First Amendment of the
United States Constitution and Tex. Const. Art. I, ' 8 of
the Texas Constitution. 

 

. . . .

 

B.  Business disparagement claim.

 

Astoria is entitled to
summary judgment on BFX=s
claim because there is no evidence giving rise to a fact question as to the
following elements necessary to establish business disparagement:

 

a.  Publication of false and disparaging
information about the plaintiff;

 

. . . .

 

With regard to the published information, BFX
must present competent, admissible evidence that the advertising or any other
statements made the basis of this suit were false, defamatory statements of
fact about BFX.  Statements of opinion
are not actionable because opinions are protected by the First Amendment of the
United States Constitution and Art. I, ' 8 of the Texas Constitution.


 

. . . .

 

D.  Lanham Act false advertising claims.

 

Astoria is entitled to summary judgment on BFX=s
false advertising claims under the Lanham Act because there is no evidence
giving rise to a fact question as to each of the following elements:








(1)  A false or misleading statement of fact about
a product;

 

. . . .

 

The first
element requires . . . a showing of misleading statements of fact . . . .  Statements of opinion are not actionable
under the Lanham Act. 

Thus, the record clearly shows that Astoria=s no-evidence motion for summary judgment was, indeed, based on a
defense arising under the federal and state Free Speech Clauses.

Brand FX asserts, however,
that Astoria=s free
speech defense is not the proper subject of a no-evidence motion for summary
judgment because it is an affirmative defense on which Astoria had the burden
of proof, and rule 166a(i) prohibits a party from moving for a no-evidence
summary judgment on claims or defenses on which it has the burden of proof.[6]













Whether Astoria was entitled
to challenge Brand FX=s business
disparagement, false advertising, and tortious interference claims in its
no-evidence motion for summary judgment depends upon which party had the burden
of proving the alleged falsity of the Advertisement.  A business disparagement claim and a false
advertising claim are similar in some respects to a defamation claim.[7]  All three claims involve the imposition of
liability for injuries sustained by the plaintiff through publications to third
parties of false statements of fact.[8]  One significant difference among the three
torts, however, is the party who has the burden of proving the truth or falsity
of the publication at issue.  In a
defamation action, the publication is presumed to be false, and truth is an
affirmative defense on which the defendant has the burden of proof.[9]  In a business disparagement or false
advertising case, however, there is no presumption of falsity; instead, the
plaintiff has the burden of proving the falsity of the publication as part of
its cause of action.[10]  Thus, unlike a defamation action, where the
plaintiff has the benefit of a presumption that the publication is false and
the defendant has the burden to prove that the publication is true, the
plaintiff in a business disparagement or false advertising case has the burden
of proving that the publication on which its claim is based is false.  The defendant in such cases has no burden to
prove the publication is true.

Likewise, to the extent that
a claim for tortious interference is based on an assertion that the tortious
act was a false statement of fact, the plaintiff has the burden of proving the
falsity of the publication.[11]  The defendant in such a case does not have
the burden of proving that the publication was true.








We, therefore, hold that,
because Astoria=s
no-evidence motion for summary judgment was based in part on its free speech
defense to Brand FX=s business
disparagement, false advertising, and tortious interference claims and Brand FX
had the burden of proving the falsity of the Advertisement to establish those
claims, Astoria=s free
speech defense was a proper subject of its no-evidence motion for summary
judgment and the trial court=s order denying the motion is appealable under section 51.014(a)(6). 

                                 B.  Scope of Our Jurisdiction

Brand FX contends that our
appellate jurisdiction is limited to reviewing the portion of the trial court=s order related to those claims against which Astoria asserted a free
speech defense and does not extend to claims or defenses that do not implicate
free speech.[12]  We agree.








To determine the scope of our
jurisdiction, we look to the legislature=s intent in enacting section 51.014(a)(6).[13]  Unless a statute is ambiguous, we discern
that intent from the language of the statute itself.[14]  We cannot construe a statutory provision to
lead to an absurd result if the provision is subject to another more reasonable
interpretation.[15]  Further, we consider the provisions of a
statute as a whole and not in isolation.[16]








The pertinent language of
section 51.014(a)(6) provides that A[a] person may appeal from an interlocutory order . . . that . . .
denies a motion for summary judgment that is based in whole or in part upon a
claim . . . or defense . . . arising under the free speech . . . clause.@[17]  A plain reading of this
language evidences clear legislative intent that a party seeking summary
judgment on claims or defenses that implicate free speech be entitled to appeal
a trial court=s denial of
this relief.[18]  Nothing in the language of section
51.014(a)(6), however, suggests to us that there is a legislative intent to
permit an interlocutory appeal from summary judgment rulings on non-free speech
claims and defenses simply because they happen to be included in the same
motion.[19]








This strict interpretation of
section 51.014(a)(6) is entirely consistent with the way courts have construed
similar subsections of this statute.  For
instance, section 51.014(a)(5) provides that A[a] person may appeal from an interlocutory order . . . that . . .
denies a motion for summary judgment that is based on an assertion of immunity
by an individual who is an officer or employee of the state.@[20]  Courts have construed this
subsection to mean that only the part of an order denying summary judgment
based on official immunity is reviewable by interlocutory appeal, even if the
order denies summary judgment on other grounds as well.[21]  Likewise, section 51.014(a)(8) provides that A[a] person may appeal from an interlocutory order . . . that . . .
grants or denies a plea to the jurisdiction by a governmental unit.@[22]  Courts have construed this
subsection to mean that only the part of an order granting or denying a plea to
the jurisdiction is reviewable by interlocutory appeal, even if the trial court=s order also denies other relief.[23]








It is well settled that an
order denying a motion for summary judgment is not appealable unless a statute
explicitly provides appellate jurisdiction.[24]  To construe section 51.014(a)(6) as
permitting interlocutory appeal of any and all issues raised in a motion for
summary judgment that is based in part on claims or defenses arising under the
Free Speech Clauses would allow a party to circumvent this restriction and
would render meaningless the provisions of section 51.014 that limit
interlocutory appeals to the matters enumerated in the statute.[25]  We may not construe a statute in any manner
that fails to give effect to all the provisions the legislature enacted or that
reduces any provision to mere surplusage.[26]








For these reasons, we hold
that only the portion of the trial court=s order denying summary judgment on Brand FX=s business disparagement, false advertising, and tortious interference
claimsCthe only claims that Astoria defended on free speech groundsCis appealable by interlocutory appeal under section 51.014(a)(6).  Our jurisdiction does not extend to the part
of the trial court=s order
disposing of claims against which Astoria did not assert free speech as a
defense.[27]

We now turn to the merits of
Astoria=s appealable complaints.

                IV.  NO-EVIDENCE SUMMARY JUDGMENT BASED ON

                                   FREE
SPEECH GROUNDS

 








In its first and eighth
issues, Astoria contends that the trial court improperly denied Astoria=s motion for a no-evidence summary judgment on Brand FX=s business disparagement claim and its false advertising claim under
the Lanham Act because Brand FX failed to produce evidence that the statements
in the Advertisement were false statements of fact rather than nonactionable
statements of opinion.  In its third
issue, Astoria argues that the trial court improperly denied Astoria=s no-evidence motion for summary judgment because Brand FX did not put
on any evidence that it suffered damages as a result of the Advertisement.  

                                     A.  Standard of Review

After an adequate time for
discovery, the party without the burden of proof may, without presenting
evidence, move for summary judgment on the ground that there is no evidence to
support an essential element of the nonmovant=s claim or defense.[28]  The motion must specifically state the
elements for which there is no evidence.[29]  The trial court must grant the motion unless
the nonmovant produces summary judgment evidence that raises a genuine issue of
material fact.[30]








When reviewing a no evidence
summary judgment, we examine the entire record in the light most favorable to
the nonmovant, indulging every reasonable inference and resolving any doubts
against the motion.[31]  If the nonmovant brings forward more than a
scintilla of probative evidence that raises a genuine issue of material fact,
then a no-evidence summary judgment is not proper.[32]


            B.  Special Damages Resulting from Business
Disparagement 

Astoria
contends that Brand FX failed to present legally sufficient evidence of special
damages in response to Astoria=s no‑evidence motion for summary judgment on Brand FX=s business disparagement claim.

To prevail on a business
disparagement claim, a plaintiff must establish that (1) the defendant
published a false, defamatory statement of fact about the plaintiff, (2) with
malice, (3) without privilege, (4) that resulted in special damages to the
plaintiff.  To prove special damages, the
plaintiff must prove that the disparaging communication played a substantial
part in inducing third parties not to deal with the plaintiff, resulting in a
direct pecuniary loss that has been realized or liquidated, such as specific
lost sales, loss of trade, or loss of other dealings.[33]













We agree that Brand FX did
not present legally sufficient evidence of special damages that it had incurred
as a result of the Advertisement.  Brand
FX argues that it Asuffered at
least $76,000 in damages@ associated
with corrective or remedial advertising[34]
and relies on the affidavit of its expert, Daniel L. Jackson.  This affidavit, however, simply reports the
opinion of Tom Prikryl, the president of an advertising agency, that ABrand FX will have to spend approximately $76,200 in corrective
advertising over a twelve‑month period to counteract Astoria=s negative advertising.@  Assuming, for argument=s sake, that this statement by Jackson is not inadmissible hearsay, it
is not evidence that Brand FX has actually incurred any corrective advertising
expenses.  At most, it is only evidence
of what such advertising might cost if Brand FX were to choose to purchase
it.  Further, Alfred Lee Finley, Brand FX=s owner and vice president, testified by deposition that Awe don=t know
anybody that lost sales directly because of the ad,@ and Gary Heisterkamp, Brand FX=s president, testified that he could not recall the identity of a
single customer that had refused to buy Brand FX=s products because of Astoria=s actions. 

Accordingly, we hold that
Brand FX presented no evidence that it incurred special damages in the form of
corrective advertising costs or lost sales as a result of the Advertisement in
response to Astoria=s
no-evidence motion for summary judgment on Brand FX=s business disparagement claim. 
Therefore, we sustain Astoria=s first and third issues.[35]

                                      C.  False Advertising

Next, we consider Astoria=s complaint that it was entitled to a no-evidence summary judgment on
Brand FX=s Lanham Act false advertising claim. 

               1.  Elements of a Prima Facie Claim of False
Advertising








To establish
a prima facie case of liability for false advertising under the Lanham Act, the
plaintiff must show that (1) the defendant made a false statement of fact[36]
about its product in a commercial advertisement; (2) the statement actually
deceived or has a tendency to deceive a substantial segment of its audience;
(3) the deception is likely to influence a purchasing decision; (4) the
defendant caused the false statement to enter interstate commerce; and (5) the
plaintiff has been or is likely to be injured as a result.[37]









The plaintiff must prove that
the statement of fact is either literally false or that it is likely to mislead
and confuse others.[38]  A statement of fact is literally false when
the evidence affirmatively shows that it is not true.[39]  If the statement is shown to be literally
false, the plaintiff is not required to show that the statement misled
customers and likely influenced their purchasing decisions.  Rather, A[i]n such a circumstance, the court will assume that the statements
actually misled consumers.@[40]  On the other hand, if the
statement is either ambiguous or true but misleading, the plaintiff must
present evidence that consumers were actually deceived by the statement.[41]

Subject to the principles of
equity, the damages to which a plaintiff may be entitled under the Lanham Act
include the defendant=s profits,
any damages sustained by the plaintiff, and the costs of the action.[42]  Injunctive relief is also available.[43]

                            2. 
Statements in the Advertisement








Astoria concedes that
affidavit evidence from Brand FX=s customers may create a fact issue regarding whether the statements
in the Advertisement were directed at Brand FX,[44]
but it argues that the statements are not statements of fact or, in the
alternative, are not literally false. 
Consequently, we turn to the content of the statements themselves.

The Advertisement asserts,
among other things, that AHigh Quality
Astoria Bodies@ are AEngineered and built with quality materials to be long lasting and
durable,@ but ALow Quality
Brand X Bodies@ have ANo engineering and [are] built with sub-standard materials.@

Astoria argues that the ANo engineering@ statement
is Anothing more than rhetorical hyperbole@ and that it is simply inconceivable that readers of a trade journal
about utility and telecommunication service vehicles would ever believe that a
product could be manufactured without resort to at least some engineering
principles.  We agree with Astoria that a
reasonable reader of ordinary intelligence would not be misled into believing
that Brand FX=s utility
bodies and toppers have no engineering whatsoever, but would instead interpret
the statement as a general assertion regarding the superiority of Astoria=s products.








We disagree, however, with
Astoria=s contention that the Abuilt with sub-standard materials@ statement is a nonactionable assertion of opinion.  Although there may be some contexts in which
reference to a product as Asubstandard@ is mere
opinion, this is not one of them.  The
types of materials Brand FX uses, as well as their quality and durability when
compared to the materials used by Astoria and other manufacturers, are facts
that can be verified.  Further, the
statement is juxtaposed against a statement that Astoria=s products are built with quality materials to be long lasting and
durable.  Thus, given its context and
verifiability, a reader of ordinary intelligence could perceive this statement
as one of fact: that the materials Brand FX uses in manufacturing its utility
bodies and toppers are of lesser quality than those typically used in the
industry and, unlike Astoria=s products, are not durable and will not last very long.  Therefore, we hold that the Advertisement=s statement that Brand FX=s products are Abuilt with
sub-standard materials@ is not mere
opinion but is a statement of fact.

Further, Brand FX put on
evidence that the statement is false. 
The affidavit of Finley, Brand FX=s owner and vice president, lists the materials used in Brand FX=s manufacturing process and explains why they are not substandard:








Brand FX only uses quality
materials to build its fiberglass truck bodies. 
The major materials used in the manufacturing process are polyester
resin, polyester gel coat, fiberglass chop strand mat, gun roving, steel and
aluminum.  Brand FX uses PVC foams of
different density and thickness and coremat polyester mat as its core for the
truck bodies.  All materials used are
above accepted industry standard quality. 
Brand FX does not use any used, damaged or surplus materials.  All of the materials used by brand FX have to
pass quality control.

This affidavit testimony is more than a scintilla
of evidence that the Advertisement is literally false and is, therefore,
sufficient to raise a fact issue regarding whether Astoria has violated the
Lanham Act.[45]

                                  3.  False Advertising Injury

Astoria also argues that
there is no evidence that Brand FX suffered an injury as a result of Astoria=s false advertising.  Astoria
contends that Brand FX=s evidence
of damagesC$4,213,000 Ain unjust enrichment@ based on Astoria=s profits and $76,200 for corrective advertisingCis insufficient to raise a material fact issue on the injury element
of Brand FX=s false
advertising claim.  This argument,
however, conflates the injury requirement for a false advertising claim with
the requirement that a plaintiff prove his actual damages in order to obtain
relief.[46]








Brand FX has produced more
than a scintilla of probative evidence from which a jury could infer that Brand
FX has been or is likely to be injured as a result of the Advertisement.  Because Brand FX presented evidence showing
that the ABuilt with
substandard materials@ statement
is literally false, we must assume that it actually misled consumers.[47]  The summary judgment record further shows
that Astoria and Brand FX are competitors and that the Advertisement disparaged
the quality of Brand FX=s
product.  From this evidence, a jury
could infer that Brand FX was in some way injured or is likely to be injured as
a result of the Advertisement. 
Therefore, the trial court properly denied summary judgment for Astoria
on Brand FX=s false
advertising claim.[48]  We overrule Astoria=s eighth issue.

                 V.  TORTIOUS INTERFERENCE WITH PROSPECTIVE

                                     BUSINESS
RELATIONS

 








Astoria also asserts that it
was entitled to a no-evidence summary judgment on Brand FX=s claim for tortious interference with prospective business
relations.  Brand FX claimed that the
following acts by Astoria constituted tortious interference with Brand FX=s prospective business relations and caused Brand FX damages:

Astoria=s use
of Brand FX=s
confidential design drawings, trade dress infringement and publication of false
information to third parties . . . . 
These acts are independently tortious and wrongful inasmuch as Astoria
has unlawfully gained access to and used Brand FX=s
confidential design drawings, infringed upon Brand FX=s
trade dress and published disparaging words to third parties about Brand FX=s
economic interests, which words were false and were published with malice and
without privilege.

 

. . . .

 

Brand FX has been damaged as
a proximate result of Astoria=s conduct, including damages in the form of lost profits.  But for Astoria=s unlawful conduct, Brand FX would have entered into a business relationship
with, or obtained more business from . . . Cook=s Pest Control[.]








To prevail on a claim for
tortious interference with prospective business relations, a plaintiff must
show (1) a reasonable probability that the plaintiff and a third party would
have entered into a contractual relationship;[49]
(2) that an independently tortious or wrongful act by the defendant prevented
the relationship from occurring;[50]
(3) that the defendant did the act with a conscious desire to prevent the
relationship from occurring or knew that the interference was certain or
substantially certain to occur as a result of the conduct;[51]
and (4) that the plaintiff incurred actual harm or damage as a result of the
defendant=s
interference.[52]

                      A. 
Interference With a Business Relationship

In its fourth issue, Astoria
contends that there is no evidence that it interfered with Brand FX=s business relationship with prospective customers.[53]  Astoria argues that Brand FX complains only
that Astoria took some of Brand FX=s business from a single, existing customer, Cook=s Pest Control, Inc.

The types of business
relationships protected against interference include continuing business
relationships.[54]  Therefore, we must review the summary
judgment evidence regarding Astoria=s alleged interference with Brand FX and Cook=s relationship because such interference would support a tortious
interference claim.  That evidence is as
follows:








Sam Alfano, the director of
finance and accounting for Cook=s, testified at his deposition that Cook=s began doing business with Fibre Body Industries (FBI), Brand FX=s predecessor, in the fall of 1999. 
Cook=s had some
problems getting FBI to resolve repair or replacement part problems
satisfactorily, and after FBI filed for bankruptcy protection and Brand FX took
over FBI=s business, Brand FX refused to honor FBI=s product warranties.  Cook=s also had a business relationship with Brand FX.  Cook=s had purchased ten of Brand FX=s toppers and continued to purchase parts from Brand FX.  But Cook=s also experienced Aa host of problems@ with Brand FX=s toppers.[55]  As a result of these things, Alfano felt that
Cook=s needed Aan
alternative@ to doing
business with FBI or Brand FX.  








At some point during or after
these events, Astoria sought Cook=s business.[56]  Cook=s wanted stair-step toppers on all of its trucks so that its fleet
would have a consistent, professional look. 
Alfano was not aware of any company besides FBI and Brand FX that
offered a stair-step roof line on its topper. 
Consequently, Cook=s provided
Astoria design drawings for a stair-step topper that FBI had provided Cook=s, as well as a topper that Cook=s had purchased from FBI. 
Astoria then manufactured stair-step toppers for Cook=s, which were delivered in late 2002 or early 2003.  After receiving these toppers, Cook=s informed Brand FX that it was not going to purchase any more toppers
from Brand FX.

We hold that this evidence
would enable reasonable and fair-minded people to reach different conclusions
regarding whether it was reasonably probable that Cook=s would have continued to purchase toppers from Brand FX if Astoria
had not been able to manufacture a stair-step topper so that Cook=s truck fleet could retain its uniform appearance.[57]  Thus, there is more than a scintilla of
evidence to support the first element of Brand FX=s tortious interference claim. 
Accordingly, we overrule Astoria=s fourth issue.








                       B. 
Independently Tortious Conduct: 
Trade

                                    Secret Misappropriation

 

In its fifth
issue, Astoria contends that it was entitled to summary judgment on Brand FX=s tortious interference claim because there is no evidence that
Astoria=s production of the replica stair-step topper constituted an
independently tortious or wrongful act. 
Brand FX contends that Astoria=s use of FBI=s and Brand
FX=s design drawings to create a stair-step topper for Cook=s was independently tortious on several grounds, including trade
secret misappropriation.  Astoria contends
there is no evidence that its conduct constituted trade secret
misappropriation.








AIndependently
tortious@ does not mean that the plaintiff must be able to prove an independent
tort.[58]  Rather, it means only that the plaintiff must
prove that the defendant=s conduct
would be actionable under a recognized tort.[59]  Conduct that is merely Asharp@ or unfair
is not actionable and cannot be the basis for an action for tortious
interference with prospective relations.[60]

                                1. 
Evidence of a Trade Secret

Generally
speaking, a trade secret is any formula, pattern, device, or compilation of
information that is used in one=s business and presents an opportunity to obtain an advantage over
competitors who do not know or use it.[61]  Before information can be termed a trade
secret, there must be a substantial element of secrecy.[62]








To determine whether a trade
secret exists, Texas courts apply a six‑factor test: (1) the extent to
which the information is known outside the business of the entity claiming the
trade secret; (2) the extent to which it was known by employees and others
involved in the business; (3) the extent of the measures taken by the entity to
guard the secrecy of the information; 
(4) the value of the information to the entity and its competitors; (5)
the amount of effort or money expended by the entity in developing the
information; and (6) the ease or difficulty with which the information could be
properly acquired or duplicated by others.[63]  These factors are relevant, but not
dispositive, criteria because A[i]t is not possible to state precise criteria for determining the
existence of a trade secret.@[64]  Because all trade secrets are
different, one or more of these six factors may not apply.  Therefore, it is not necessary to satisfy all
six factors in every case to prove that a trade secret exists.[65]  Moreover, other circumstances that are not
included in the six factors may be relevant to the trade secret analysis.  Accordingly, we weigh the factors in the
context of the surrounding circumstances to determine whether a trade secret
exists.[66]








We will first apply the
six-factor test to determine whether there is some evidence that the design
drawings are a trade secret.  Evidence of
four of these factors in this case is as follows:[67]

Extent to which the
information was known outside Brand FX=s business.  Alfano testified at his deposition that FBI
or Brand FX were the only sources of the design drawings that he was aware
of.  Thus, the evidence shows that FBI
and Brand FX were the only source of the drawings.








Extent of the measures taken
to guard the secrecy of the information.  The evidence further shows that FBI did not
provide the drawings to competitors or even to customers, unless they knew or
were advised that the drawings were to be kept confidential.  Finley stated in his affidavit that FBI made
the drawings for the stair-step topper under his direction and that he
considered them confidential.  During the
time he owned or operated FBI from the 1980s through April 2000,[68]
he did not provide the drawings to any competitor.  Finley further stated that the drawings were
shared only with customers who knew or were advised that the drawings were not
to be disclosed to any competitor and that FBI considered the drawings
confidential.

The value of the information
to Brand FX and its competitors.  There is evidence that the design drawings
were valuable to Brand FX because they detailed how to make the stair-step
design that was FBI=s and Brand FX=s standard topper and they contained specialized information regarding
the interior topper configurations that FBI had designed specifically for Cook=s.  FBI and its successor, Brand
FX, were the only companies that offered a stair-step topper roof line like
Cook=s wanted[69]
or that had design drawings for such a topper. 
Alfano testified that Cook=s used two FBI stair-step toppers, and the difference between them was
the internal shelving configuration that FBI had designed.








In addition, there is
evidence that the drawings were valuable to Astoria because it wanted to
develop a stair-step topper to compete with Brand FX  for Cook=s business.  According to
Alfano, Cook=s liked the
interior topper configuration that FBI had designed, and Cook=s had rejected Astoria=s proposed design concepts for the topper interiors.  Thole, Astoria=s chief engineer, testified at his deposition that he had relied on
FBI=s design drawings to make sure that he incorporated the changes to the
topper interiors that Alfano wanted.

The amount of effort or money
expended by FBI or Brand FX in developing the information.  There is evidence that FBI had
invested considerable resources to acquire and develop the design drawings.  Finley stated in his affidavit that, while he
owned FBI, he acquired a company called Northwest Bodies, Inc. that
manufactured a topper with a stair-step design. 
Finley stated that, following this acquisition, he made the stair-step
topper FBI=s standard
topper and had a set of design drawings developed for it.  Alfano testified that FBI had also prepared
specialized design drawings for the interiors of Cook=s stair-step toppers.

Examining all of this
evidence in the light most favorable to Brand FX, the nonmovant,[70]
we hold that there is more than a scintilla of evidence that the design
drawings are a trade secret.[71]








                               2. 
Evidence of Misappropriation

We now consider whether there
is evidence that Astoria misappropriated the design drawings.  A person is liable for using a trade secret
if he discovered the secret by improper means.[72]  Improper means of acquiring another=s trade secrets include theft, fraud, unauthorized interception of
communications, inducement of or knowing participation in a breach of
confidence, and other means either wrongful in themselves or wrongful under the
circumstances of the case.[73]








In this case, there is
evidence that Astoria sought Cook=s business and asked Cook=s for copies of the design drawings for the stair-step topper because
Cook=s wanted toppers of that design and there was no source for the
drawings other than FBI or Brand FX. 
Although Alfano testified that no one at FBI had told him the drawings
were confidential, Finley stated by affidavit that, if the drawings were shared
with customers, they were told or knew that the drawings were confidential and
were not to be disclosed to any competitor. 
Thole, Astoria=s chief
engineer, testified that he used the drawings and Alfano=s notes on them to make sure that he incorporated the changes into the
interior bin packages that Alfano wanted. 
Thole conceded that he felt Aa little bit@ strange or
awkward having a copy of FBI=s drawings, but he was not too concerned because the drawings were not
marked confidential.  Thole viewed the
drawings as sales drawings of the type that Astoria would send out to its
customers. 

Viewing this evidence in the
light most favorable to Brand FX, we hold that it would enable reasonable and
fair-minded people to reach different conclusions regarding whether Astoria
misappropriated the design drawings because it discovered the drawings by
improper means.[74]

                                   C.  Evidence of Damages

 








Next, Astoria argues that
there is no evidence that its alleged wrongful conduct in interfering with
Brand FX=s prospective business relations caused Brand FX damages or
injury.  Brand FX alleged that it had Abeen damaged as a proximate result of Astoria=s conduct, including damages in the form of lost profits.  But for Astoria=s unlawful conduct, Brand FX would have . . . obtained more business
from . . . Cook=s Pest
Control[.]@[75]

Alfano and Daniel Jackson,
Brand FX=s expert, testified by deposition and affidavit, respectively, that
Cook=s had purchased ten toppers from Brand FX in June 2002.  Jackson stated in his affidavit that Cook=s had paid a total of $25,513.15 for the toppers.  Jackson further stated that Brand FX=s invoices for the toppers and its monthly income statements detailing
the expenses and other costs related to the manufacture and sale of the toppers
showed that Brand FX=s average
gross profit on a topper was roughly 39%.[76]








According to Jackson and
Alfano, Brand FX did not sell any toppers to Cook=s after June 2002.[77]  Instead, Cook=s bought stair-step toppers from Astoria that Astoria had manufactured
for Cook=s using Brand FX=s design
drawings.  Jackson stated in his
affidavit that purchase orders, invoices, and related documents produced by
Brand FX, Astoria, and Cook=s showed that Astoria sold Cook=s 270 toppers between 2002 and 2005C2 in 2002, 173 in 2003, 89 in 2004, and 6 in 2005.

Examining this evidence in
the light most favorable to Brand FX,  we
hold that it would enable reasonable and fair-minded people to reach different
conclusions concerning whether Cook=s would have bought additional toppers from Brand FX if Astoria had
not been able to manufacture the look-alike stair-step topper.  A fact finder could also reasonably infer
from this evidence that Brand FX would have made a profit on each topper sold,
and that, because Cook=s did not
buy any toppers from Brand FX after Astoria began manufacturing the
look-alike topper, Brand FX lost profits for each topper that it did not sell
to Cook=s.  Accordingly, there is more
than a scintilla of evidence that Brand FX suffered damages as a result of
Astoria=s alleged tortious interference with Brand FX=s prospective business relations.








Because there is more than a
scintilla of evidence that Astoria interfered with Brand FX=s business relationship with Cook=s, that Astoria=s conduct
was independently tortious or wrongful, and that Brand FX suffered damages as a
result, we hold that the trial court did not err by denying Astoria=s motion for a no-evidence summary judgment on Brand FX=s tortious interference claim. 
We overrule Astoria=s fifth issue.[78]

                       VI.  OBJECTIONS TO FINLEY=S AFFIDAVIT

In its tenth
issue, Astoria complains that the trial court improperly overruled Astoria=s objections to Finley=s affidavit.  Astoria asserts
that Finley was not competent to testify as an expert, that his testimony would
not be helpful to a jury, and that the testimony is not based on a reliable
foundation.  Astoria further asserts that
Finley=s affidavit testimony regarding whether the materials Brand FX uses to
manufacture its products are of Aaccepted industry standard quality@ is subjective and conclusory. 








To be competent summary
judgment evidence, an affidavit must show affirmatively that the facts sought
to be proven therein would be admissible in evidence at a conventional trial
and that the affiant is competent to testify to the matters stated.[79]  If scientific, technical, or other
specialized knowledge will assist the trier of fact to understand the evidence
or to determine a fact in issue, a witness qualified as an expert by knowledge,
skill, experience, training, or education may testify thereto in the form of an
opinion or otherwise.[80]  The expert=s affidavit must be based on a reliable foundation.[81]  Whether the expert=s affidavit testimony is competent summary judgment evidence is a
matter committed to the trial court=s discretion.[82]













In this case, Finley stated
in his affidavit that he had been in the utility and service truck body
industry for thirty-six years and had owned several companies that were in the
business of manufacturing and selling fiberglass truck bodies.  Finley further stated that he was the owner
and vice president of Brand FX.  Thus,
Finley was qualified by his skill and experience to testify as an expert
regarding the quality of the materials Brand FX and other companies used to
manufacture utility bodies.  Further, the
average person is unfamiliar with the types and quality of such materials;
therefore, Finley=s testimony
would assist the court, and the jury, respectively,[83]
in determining whether the statement in the Advertisement that Brand FX=s products are Abuilt with
sub-standard materials@ is
reasonably capable of defamatory meaning and actually false.  Moreover, Finley=s affidavit provides a reliable foundation for his opinion that the Abuilt with sub-standard materials@ statement is false.  The
affidavit details the materials Brand FX uses in the manufacturing process and
states that they are above accepted industry standard because they must pass
quality control and are not used, damaged, or surplus materials.  These averments are sufficiently clear and
could have been readily controverted.[84]  Accordingly, we hold that the trial court did
not abuse its discretion by denying Astoria=s objections to Finley=s affidavit testimony.[85]  We overrule Astoria=s tenth issue.

                                        VII.  CONCLUSION

Having
concluded that we have jurisdiction to review by interlocutory appeal only the
portion of the trial court=s order denying summary judgment on Brand FX=s claims that Astoria challenged on free speech grounds, we dismiss
Astoria=s appeal except as it relates to Brand FX=s business disparagement, false advertising, and tortious interference
claims.[86]  We reverse the trial court=s order denying Astoria summary judgment on Brand FX=s business disparagement claim and render judgment that Brand FX take
nothing on that claim.  We affirm the
trial court=s order
denying Astoria summary judgment on Brand FX=s false advertising and tortious interference with prospective
business relations claims.

 

JOHN CAYCE

CHIEF JUSTICE








PANEL A: 
CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

DELIVERED: 
March 29, 2007











[1]See Tex. Civ. Prac. & Rem. Code Ann. '
51.014(a)(6) (Vernon Supp. 2006).





[2]AUtility@ and Aservice@
bodies are interchangeable terms.  A
utility body is a storage compartment that runs alongside the bed of a
commercial truck.   A topper is a
structure that covers the bed of a commercial truck. 





[3]See 15
U.S.C.A. '
1125(a)(1)(B) (West 1998) (AAny person who, . . . in
commercial advertising or promotion, misrepresents the nature, characteristics,
qualities, or geographic origin of his or her or another person=s
goods, services, or commercial activities, shall be liable in a civil action by
any person who believes that he or she is or is likely to be damaged by such
act.@).





[4]Cincinnati
Life Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex. 1996).





[5]Tex. Civ. Prac. & Rem. Code Ann. '
51.014(a)(6).





[6]See Tex. R. Civ. P. 166a(i) (providing that
a party may move for a no-evidence summary judgment on claims or defenses on
which an adverse party has the burden of proof); Keszler v. Mem=l
Med. Ctr. of E. Tex., 105 S.W.3d 122, 126 (Tex. App.CCorpus
Christi 2003, no pet.) (holding same); see also Battin v. Samaniego, 23
S.W.3d 183, 185-86 (Tex. App.CEl Paso 2000, pet. denied)
(holding that the defendant was not entitled to a no-evidence summary judgment
on its own affirmative defense).





[7]Forbes
Inc. v. Granada Biosciences, Inc., 124 S.W.3d 167, 170 (Tex.
2003).  To maintain a defamation cause of
action, the plaintiff must prove that the defendant (1) published a statement;
(2) that was defamatory concerning the plaintiff; (3) while acting with either
actual malice, if the plaintiff was a public official or public figure, or
negligence, if the plaintiff was a private individual, regarding the truth of
the statement.  WFAA‑TV, Inc. v.
McLemore, 978 S.W.2d 568, 571 (Tex. 1998), cert. denied, 526 U.S.
1051 (1999).





[8]See
Logan v. Burgers Ozark Country Cured Hams, Inc., 263
F.3d 447, 462 (5th Cir. 2001) (false advertising); WFAA-TV, Inc., 978
S.W.2d at 571 (defamation); Hurlbut v. Gulf Atlantic Life Ins. Co., 749
S.W.2d 762, 766 (Tex. 1987) (business disparagement).





[9]Hurlbut, 749
S.W.2d at 766; see also Tex. Civ.
Prac. & Rem. Code Ann. ' 73.005 (Vernon 2005)
(providing that truth is a defense to a defamation action).





[10]Hurlbut, 749
S.W.2d at 766; see also Logan, 263 F.3d at 462; Pizza Hut,
Inc. v. Papa John=s Int=l,
Inc., 227 F.3d 489, 495-96 (5th Cir. 2000), cert. denied, 532 U.S.
920 (2001).





[11]See
Ash v. Hack Branch Distrib. Co., 54 S.W.3d 401, 413-14 (Tex.
App.CWaco
2001, pet. denied) (discussing the elements that a plaintiff must prove in a
tortious interference case).





[12]There
appears to be a split of authority in the courts of appeals regarding the scope
of our jurisdiction over an order denying a motion for summary judgment that is
based only in part on the Free Speech Clauses.  Compare KTRK Television, Inc. v. Fowkes,
981 S.W.2d 779, 787 (Tex. App.CHouston [1st Dist.] 1998,
pet. denied)  (concluding that the court
of appeals had jurisdiction under section 51.014(a)(6) to consider only claims
on which summary judgment was denied that Awere defended in whole or in
part on free speech grounds@), disapproved on other
grounds, Turner v. KTRK Television, Inc., 38 S.W.3d 103 (Tex. 2000), with
Cox Tex. Newspapers, L.P. v. Wootten, 59 S.W.3d 717, 720-21 (Tex. App.CAustin
2001, pet. denied); Am. Broadcasting Cos. v. Gill, 6 S.W.3d 19, 26-27
(Tex. App.CSan
Antonio 1999, pet. denied), disapproved on other grounds, Turner v. KTRK
Television, Inc., 38 S.W.3d 103 (Tex. 2000), and Delta Air Lines, Inc.
v. Norris, 949 S.W.2d 422, 429 (Tex. App.CWaco
1997, writ denied) (all holding that courts of appeals have jurisdiction under
51.014(a)(6) to review the entire order denying summary judgment, including
claims or defenses that do not arise under the Free Speech Clauses).





[13]Continental
Cas. Co. v. Downs, 81 S.W.3d 803, 805 (Tex. 2002); Nat=l
Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex.
2000).





[14]Downs, 81
S.W.3d at 805; see Tex. Gov=t Code Ann. '
311.011(a) (Vernon 2005) (AWords and phrases shall be
read in context and construed according to the rules of grammar and common
usage.@); id.
'
312.002(a) (providing that words shall be given their ordinary meaning).





[15]C
& H Nationwide, Inc. v. Thompson, 903 S.W.2d 315, 322 n.5
(Tex. 1994), abrogated on other grounds, Battaglia v. Alexander, 177
S.W.3d 893 (Tex. 2005); Sharp v. House of Lloyd, Inc., 815 S.W.2d 245,
249 (Tex. 1991).





[16]Helena
Chem. Co. v. Wilkins, 47 S.W.3d 486, 493 (Tex. 2001).





[17]Tex. Civ. Prac. & Rem. Code Ann. '
51.014(a)(6).





[18]See
Fowkes, 981 S.W.2d at 787.





[19]But
see Delta Air Lines, 949 S.W.2d at 429 (AA
plain reading of the statute shows that the appeal is from >the
order.= . .
. Thus, when section 51.014(6) applies, an order denying a motion for summary
judgment is fully appealable.@); see also Cox Tex.
Newspapers, L.P., 59 S.W.3d at 720-21 (following Delta Air Lines and
holding that, Ain
the interest of judicial economy, we may consider on appeal any claim raised in
the media defendant=s
motion and denied by the trial court@); Am. Broadcasting Cos.,
6 S.W.3d at 26 (following Delta Air Lines and referring to KTRK
Television, Inc.=s
contrary holding as dicta).





[20]Tex. Civ. Prac. & Rem. Code Ann. '
51.014(a)(5) (Vernon Supp. 2006).





[21]See
Tex. State Technical Coll. v. Cressman, 172 S.W.3d 61, 64-65 (Tex.
App.CWaco
2005, pet. denied) (holding that the scope of its jurisdiction under section
51.014(a)(5) was limited to review of the trial court=s
denial of summary judgment on appellants= official immunity defense
and did not extend to their contention that appellees had failed to state a
claim for illegal eavesdropping); City of Alamo v. Holton, 934 S.W.2d
833, 836 (Tex. App.CCorpus
Christi 1996, no writ) (holding that its interlocutory jurisdiction under
section 51.014(a)(5) was limited to reviewing the merits of the city=s
official immunity defense and did not extend to the city=s
sovereign immunity defense); Boozier v. Hambrick, 846 S.W.2d 593, 596
(Tex. App.CHouston
[1st Dist.] 1993, no writ) (holding that the appellate court had jurisdiction
under section 51.014(a)(5) to review denial of summary judgment based on the
movant=s
official immunity defense, but not on the movant=s
defenses of truth, privilege, estoppel, and no interference with contract).





[22]Tex. Civ. Prac. & Rem. Code Ann. '
51.014(a)(8) (Vernon Supp. 2006).





[23]See Ware
v. Miller, 82 S.W.3d 795, 800 (Tex. App.CAmarillo 2002, pet. denied)
(holding that it had jurisdiction over trial court=s
order denying defendants= plea
to the jurisdiction based on official immunity but not based on their
challenges to plaintiff=s
standing made in their individual capacities); Montgomery County v. Fuqua,
22 S.W.3d 662, 664 (Tex. App.CBeaumont 2000, pet. denied)
(exercising jurisdiction over the appeal from the trial court=s
order denying defendant=s
motion to dismiss based on a plea to the jurisdiction but not based on the
statute of limitations); City of El Campo v. Rubio, 980 S.W.2d 943, 944,
949 (Tex. App.BCorpus
Christi 1998, pet. dism=d
w.o.j.) (exercising jurisdiction over the part of the trial court=s
order denying a plea to the jurisdiction and motion for summary judgment based
on official immunity, but not over the part denying summary judgment on
plaintiff=s
negligence and intentional infliction of emotional distress claims).





[24]Stary
v. DeBord, 967 S.W.2d 352, 352-53 (Tex. 1998); Cincinnati
Life Ins. Co., 927 S.W.2d at 625.  An
interlocutory order that is explicitly appealable under section 51.014 may not
be used as a vehicle for carrying other nonappealable interlocutory orders to
the appellate court.  See Kaplan v.
Tiffany Dev. Corp., 69 S.W.3d 212, 217 (Tex. App.CCorpus
Christi 2001, no pet.); City of Arlington v. Tex. Elec. Serv. Co., 540
S.W.2d 580, 582 (Tex. Civ. App.CFort Worth 1976, writ ref=d
n.r.e.).





[25]Astoria=s
reliance on In re B.L.D. as authority for its assertion that we have
jurisdiction over the entire order is misplaced.  See 113 S.W.3d 340, 349 (Tex. 2003)
(holding that an appellate court generally will decide constitutional questions
only when it cannot resolve issues on nonconstitutional grounds), cert.
denied, 541 U.S. 945 (2004).  B.L.D.
is inapposite; the appellate court in that case had jurisdiction to review the
trial court=s
entire order because it was final.





[26]Mobil
Oil Corp. v. Shores, 128 S.W.3d 718, 725 (Tex. App.CFort
Worth 2004, no pet.).





[27]See
KTRK Television, Inc., 981 S.W.2d at 787.

 





[28]Tex. R. Civ. P. 166a(i).





[29]Id.;
Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 207
(Tex. 2002). 





[30]See Tex. R. Civ. P. 166a(i) & cmt.; Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).





[31]Sudan
v. Sudan,  199
S.W.3d 291, 292 (Tex. 2006).





[32]Moore
v. K Mart Corp., 981 S.W.2d 266, 269 (Tex. App.CSan
Antonio 1998, pet. denied).





[33]Hurlbut, 749
S.W.2d at 767; see also Restatement
(Second) of Torts '
632(a) & cmt. b (1977); 4 Texas
Torts & Remedies ' 52.10[3] (J. Hadley Edgar,
Jr. & James B. Sales eds., 2005).





[34]Brand
FX=s
damages claim is based on section 633 of the Restatement, which provides that
recovery is also permitted for Athe expense of measures
reasonably necessary to counteract the publication,@ such
as expenses incurred in a suit to quiet title or the cost of notifying
customers of an injurious publication=s falsity or the publication
of denials.  Restatement (Second) of Torts '
633(1)(b) & cmt. k (1977).  We note
that neither the Supreme Court of Texas nor any intermediate court of appeals has
adopted this part of the Restatement or held that this type of pecuniary loss
is compensable in Texas in a business disparagement case.  See, e.g., Tex. Beef Cattle Co. v.
Green, 921 S.W.2d 203, 208-09 (Tex. 1996) (holding that a plaintiff in a
malicious prosecution case cannot recover costs incident to defending a civil
lawsuit absent a showing of special damages, i.e., an arrest or criminal
prosecution); A.H. Belo Corp. v. Sanders, 632 S.W.2d 145, 145-46 (Tex.
1982) (holding, in a slander of title case, that the plaintiff could not
recover damages absent a showing that he had lost specific sales on the subject
property and rejecting the application of Restatement ' 633
to hold otherwise); see also C.P. Interests, Inc. v. Ca. Pools, Inc.,
238 F.3d 690, 695-96 (5th Cir. 2001) (holding that, under Texas law, attorney=s
fees are not a form of pecuniary loss and do not constitute special damages in
a business disparagement case).





[35]In
light of our holding regarding these issues, we need not consider Astoria=s
second and ninth issues, in which it complains that Jackson=s
affidavit contains inadmissible hearsay and that Brand FX did not produce any
evidence of malice.  See Tex. R. App. P. 47.4  (providing that a court of appeals need
address only the issues raised that are necessary to the final disposition of
the appeal).





[36]A
statement of fact states a Aspecific and measurable
claim, capable of being proved false or of being reasonably interpreted as a
statement of objective fact.@  Pizza Hut, Inc., 227 F.3d at 495
(quoting Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173
F.3d 725, 731 (9th Cir. 1999)).  It is
one that Aadmits
of being adjudged true or false in a way that . . . admits of empirical
verification.@ Id.;
see also Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.,
784 F.2d 674, 679 (5th Cir. 1986).





[37]Logan, 263
F.3d at 462; Pizza Hut, Inc., 227 F.3d at 495.





[38]Pizza
Hut, Inc., 227 F.3d at 495.





[39]See
Logan, 263 F.3d at 462; Edmark Indus. SBN. BHD. v. S. Asia Int=l
(H.K.) Ltd., 89 F. Supp. 2d 840, 845 (E.D. Tex. 2000)  (both holding that statements were literally
false where the evidence showed that the defendant=s
products did not have all the features they were advertised to have); see
also Castrol, Inc. v. Quaker State Corp., 977 F.2d 57, 63 (2d Cir. 1992)
(holding that, in a comparative advertising case, a statement is literally
false if the evidence affirmatively shows that the defendant=s
product is not, as claimed, superior to the plaintiff=s
product).





[40]Logan, 263
F.3d at 462 (quoting Pizza Hut, Inc., 227 F.3d at 497); accord IQ
Prods. Co. v. Pennzoil Prods. Co., 305 F.3d 368, 375 (5th Cir. 2002), cert.
denied, 538 U.S. 944 (2003).





[41]Pizza
Hut, Inc., 227 F.3d at 497.





[42]15
U.S.C.A. '
1117(a) (West Supp. 2006).





[43]Id. '
1116(a).





[44]See Allied
Mktg. Group, 111 S.W.3d at 175; Diaz v. Rankin, 777 S.W.2d 496,
499-500 (Tex. App.CCorpus
Christi 1989, no writ) (both holding that evidence that one person reasonably
recognized the alleged defamatory statement as referring to the plaintiff was
sufficient to defeat summary judgment).





[45]We
address Astoria=s
objections to Finley=s
affidavit in section VI.





[46]See Logan,
263 F.3d at 462; see also Balance Dynamics Corp. v. Schmitt Indus.,
Inc., 204 F.3d 683, 689 (6th Cir.) (noting importance of Aclearly
distinguishing the elements necessary to prove a breach of the Lanham Act from
the elements necessary to justify a certain remedy for that breach@), cert.
denied, 531 U.S. 927 (2000).





[47]See Pizza
Hut Inc., 227 F.3d at 497.  





[48]See
Moore, 981 S.W.2d at 269 (holding that a no-evidence summary judgment is not
proper if the nonmovant brings forward more than a scintilla of probative
evidence that raises a genuine issue of material fact).





[49]Ash, 54
S.W.3d at 413-14.





[50]Wal‑Mart
Stores, Inc. v. Sturges, 52 S.W.3d 711, 726 (Tex. 2001).





[51]Bradford
v. Vento, 48 S.W.3d 749, 757 (Tex. 2001); Restatement (Second) of Torts ' 766B
cmt. d (1979).





[52]Ash, 54
S.W.3d at 414; Scott v. Galusha, 890 S.W.2d 945, 951 (Tex. App.CFort
Worth 1994, writ denied).





[53]See
Ash, 54 S.W.3d at 413.





[54]Heil-Quaker
Corp. v. Mischer Corp., 863 S.W.2d 210, 214 (Tex. App.CHouston
[14th Dist.] 1993), writ granted, judgm=t
vacated w.r.m., 877 S.W.2d 300 (Tex. 1994); see Restatement (Second) of Torts ' 766B
cmts. a, c (stating that the types of business relations protected are business
relations that have not yet been reduced to a contract and continuing business
or other customary relationships not amounting to a formal contract).





[55]For
example, some of the interior shelving in the toppers was the wrong size,
mounting holes were not predrilled, and there was no weather stripping around
the doors. 





[56]There
is conflicting evidence concerning whether Astoria sought Cook=s
business.  Alfano testified at his
deposition that he believed Astoria had sent Cook=s a
cold-call email.  Robert J. Wolf, Astoria=s
chief executive officer, testified at his deposition that Cook=s Acame
to us.@ 





[57]See Ford
Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004) (holding that
more than a scintilla of evidence exists if the evidence rises to a level that
would enable reasonable and fair‑minded people to differ in their
conclusions).





[58]Wal-Mart
Stores, Inc., 52 S.W.3d at 726.





[59]Id.  In Wal-Mart Stores, Inc., the supreme
court gave the following, nonexhaustive list of examples to illustrate what
conduct can constitute tortious interference with prospective relations:

 

[A]
plaintiff may recover for tortious interference from a defendant who makes
fraudulent statements about the plaintiff to a third person without proving
that the third person was actually defrauded. 
If, on the other hand, the defendant=s statements are not intended
to deceive, . . . then they are not actionable. 
Likewise, a plaintiff may recover for tortious interference from a
defendant who threatens a person with physical harm if he does business with
the plaintiff.  The plaintiff need prove
only that the defendant=s
conduct toward the prospective customer would constitute assault.  Also, a plaintiff could recover for tortious
interference by showing an illegal boycott, although a plaintiff could not
recover against a defendant whose persuasion of others not to deal with the
plaintiff was lawful.

 

Id.





[60]Id.





[61]Computer
Assocs. Int=l,
Inc. v. Altai, Inc., 918 S.W.2d 453, 455 (Tex. 1996).





[62]Sands
v. Estate of Buys, 160 S.W.3d 684, 687 (Tex. App.CFort
Worth 2005, no pet.).





[63]In re
Bass, 113 S.W.3d 735, 739 (Tex. 2003); Sands, 160 S.W.3d at 687-88.





[64]Bass, 113
S.W.3d at 740 (quoting Restatement
(Third) of Unfair Competition ' 39 cmt. d (1995)).





[65]Id.





[66]Id.





[67]There
is no evidence regarding two of the factors: the extent to which the
information was known by Brand FX=s employees and others
involved in the business; and the ease or difficulty with which the information
could be properly acquired or duplicated by others.





[68]Finley
stated that he owned FBI until 1997, when he sold the company to an investment
company called Dubin & Clark. 
Following the sale, Finley was employed by Dubin & Clark as FBI=s
president until April 2000.  Because Cook=s was
given the design drawings sometime after it began doing business with FBI in
the fall of 1999, it could have received them during this period.  Finley further stated in his affidavit that
he reacquired all of FBI=s
assets, including its intellectual property, in April 2002.  There is no evidence that Dubin & Clark
did not attempt to keep the drawings confidential after Finley resigned as
president in April 2000, and a fact finder could reasonably infer that Finley
continued to attempt to keep the design drawings confidential after reacquiring
them in 2002.





[69]Alfano
testified that Cook=s
wanted all of its trucks to have stair-step toppers so that its fleet would
have a consistent look. 





[70]See
Sudan, 199 S.W.3d at 292.





[71]See
Ford Motor Co., 135 S.W.3d at 601.





[72]Hyde
Corp., 314 S.W.2d at 769; Sands, 160 S.W.3d at 687.





[73]Restatement (Third) of Unfair Competition ' 43
(1995); see Hyde Corp., 314 S.W.2d at 769 (adopting Restatement of Torts ' 757,
the precedessor to Restatement (Third)
of Unfair Competition '' 39-45); accord Mabrey v.
SandStream, Inc., 124 S.W.3d 302, 310 n.13 (Tex. App.CFort
Worth 2003, no pet.).





[74]See Restatement (Third) of Unfair Competition '
43.  Astoria argues that it did not
improperly acquire or use the drawings because it could have obtained the same
information by studying the actual stair-step topper that Cook=s had
provided Astoria or the Brand FX stair-step topper that was readily available
in the marketplace.  But the mere fact
that knowledge of a product may be acquired through lawful means such as
inspection, experimentation, and analysis does not preclude protection from
those who would secure that knowledge by unfair means.  K & G Oil Tool & Serv. Co. v. G
& G Fishing Tool Serv., 158 Tex. 594, 314 S.W.2d 782, 788, cert.
denied, 358 U.S. 898 (1958).  The
question is not how could Astoria have secured the knowledge, but how did it? Am.
Derringer Corp., 924 S.W.2d at 777; Brown v. Fowler, 316 S.W.2d 111,
114 (Tex. Civ. App.CFort
Worth 1958, writ ref=d
n.r.e.).  





[75]Astoria
contends, and we have held, that Brand FX did not produce legally sufficient
evidence that it lost sales as a result of the Advertisement.  See supra section IV(B).  Astoria=s statements in the
Advertisement are, however, just one of the bases of Brand FX=s
tortious interference claim.  Therefore,
we must consider whether Brand FX put on any evidence that Astoria engaged in
other tortious conduct that resulted in actual harm or damage to Brand FX.





[76]In
the trial court, Astoria objected to Jackson=s methodology for determining
Brand FX=s
gross profits on the toppers Abecause there has been no
showing establishing the reliability of the regression analysis that he
performed.@  Astoria does not, however, challenge Jackson=s
methodology on appeal. 





[77]Alfano
testified that Cook=s did
continue to purchase parts from Brand FX.





[78]In
light of our holdings that our jurisdiction does not extend to the part of the
trial court=s
order disposing of claims or defenses that do not implicate free speech and
that Astoria was not entitled to summary judgment on Brand FX=s
tortious interference claim because a fact issue exists on the trade secret
misappropriation element of that claim, we will not address the questions
raised by Astoria in issues six and seven of whether Brand FX=s
common law misappropriation claim is preempted by federal patent law, or
whether Astoria was entitled to summary judgment on Brand FX=s
trade dress infringement claim because the design was functional.  See supra at Section III (B); Tex. R. App. P. 47.1.





[79]Tex. R. Civ. P. 166a(f); Ryland Group,
Inc. v. Hood, 924 S.W.2d 120, 122 (Tex. 1996).





[80]Tex. R. Evid. 702; E.I. du Pont de
Nemours & Co. v. Robinson, 923 S.W.2d 549, 556 (Tex. 1995).





[81]E.I.
du Pont de Nemours & Co., 923 S.W.2d at 556.





[82]United
Blood Servs. v. Longoria, 938 S.W.2d 29, 30 (Tex. 1997).





[83]A
plaintiff ultimately must prove that the defendant published false, disparaging
information about the plaintiff, see Forbes Inc., 124 S.W.3d at 170, but
whether the words used in a publication are reasonably capable of defamatory
meaning is initially a question of law for the court to decide.  See Turner, 38 S.W.3d at 114.





[84]See Tex. R. Civ. P. 166a(c) (providing that
expert testimony from an interested witness is competent summary judgment
evidence if it is clear, positive, direct, otherwise credible and free from
inconsistencies, and could have been readily controverted); Ryland Group,
Inc., 924 S.W.2d at 122 (stating that conclusory affidavits are not enough
to raise a fact issue because they are not credible or susceptible to being
readily controverted).





[85]See United
Blood Servs., 938 S.W.2d at 30.





[86]See
Kaplan, 69 S.W.3d at 217; Markel v. World Flight, Inc., 938 S.W.2d 74,
78, 81 (Tex. App.CSan
Antonio 1996, no writ); Prodeco Exploration, Inc. v. Ware, 684 S.W.2d
199, 201 (Tex. App.CHouston
[1st Dist.] 1984, no writ) (all addressing the parts of the respective appeals
over which they had jurisdiction and dismissing the remainder of the appeals
for want of jurisdiction).