# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-20440

United States Court of Appeals
Fifth Circuit

**FILED**

September 11, 2020

Lyle W. Cayce
Clerk

BOLTEX MANUFACTURING COMPANY, L.P.; WELDBEND CORPORATION,

Plaintiffs - Appellants Cross-Appellees

v.

GALPERTI, INCORPORATED; OFFICINE NICOLA GALPERTI E FIGLIO S.P.A.,

Defendants - Appellees Cross-Appellants

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-1439

Before SMITH, HIGGINSON, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

Boltex Manufacturing Co., L.P. (Boltex) and Weldbend Corp. (Weldbend) filed Lanham Act claims for false advertising and unfair competition, as well as Texas common law claims for unfair competition, against Galperti, Inc. (Galperti) and its Italian affiliate, Officine Nicola Galperti e Figlio (ONG). Galperti counterclaimed alleging false advertising, false designation of origin,

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-20440

and unfair competition. The district court granted summary judgment on all of the parties' claims. We AFFIRM.

**I.**

The parties in this case manufacture carbon steel flanges, which are metal discs and rings used to connect pipes, valves, pumps, and other equipment in the oil and gas, petrochemical, and construction industries. The American Society of Testing and Materials (ASTM) issues standards prescribing chemical and mechanical property requirements for forged carbon steel flanges. Under the ASTM A105 standard, flanges above pressure class 300 must undergo a heat treatment process to increase the carbon steel's toughness and ductility. Here, the dispute centers on an extensive heat treatment process called normalization. Because normalized flanges cost more to manufacture, they are generally priced higher than non-normalized flanges.

Plaintiffs Boltex and Weldbend alleged that Defendants Galperti and ONG advertise their flanges as normalized, even though they are not. Galperti counterclaimed that Boltex and Weldbend falsely advertise their products as American-made and misrepresent their quality, characteristics, and technical standards.[1] The district court concluded that Plaintiffs failed to produce summary judgment evidence creating a genuine issue of material fact as to their alleged injury; accordingly, the court granted summary judgment in favor of Defendants on Plaintiffs' Lanham Act and unfair competition claims. The district court likewise found that Galperti had not raised sufficient evidence of likelihood of injury to withstand summary judgment on its counterclaims; the court therefore granted summary judgment in favor of Plaintiffs on Galperti's Lanham Act and unfair competition counterclaims. Both sides appeal.

---

[1] ONG filed its own answer which did not include any counterclaim(s).

2

## II.

We review a grant of summary judgment *de novo*, applying the same legal standard as the district court. *Springboards To Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 811 (5th Cir. 2019). Summary judgment is warranted when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Id.*; Fed. R. Civ. P. 56(a). When, as here, cross-motions for summary judgment have been ruled upon, we examine "each party's motion independently" and view "the evidence and inferences in the light most favorable to the nonmoving party." *Springboards*, 912 F.3d at 811 (quoting *JP Morgan Chase Bank, N.A. v. Data Treasury Corp.*, 823 F.3d 1006, 1011 (5th Cir. 2016)). A genuine issue of material fact exists if a reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 US. 242, 252 (1986).

## III.

Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125, establishes a cause of action for, among other things, false advertising:

> Any person who, on or in connection with any goods or services, or any container of goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A)–(B).    To establish a prima facie case of false advertising under Section 43(a), the plaintiff must show that the defendant made (1) a false or misleading statement of fact about a product; (2) the statement was deceptive; (3) the deception is material; (4) the product is in interstate commerce; and (5) the plaintiff has been injured or is likely to be injured as a result.  *Logan v. Burgers Ozark Country Cured Hams, Inc.*, 263 F.3d 447, 462 (5th Cir. 2001).  "The failure to prove the existence of any element of the prima facie case is fatal to the plaintiff's claim."  *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000).

The motions for summary judgment here turn on the final element: injury.    At the outset, Plaintiffs contend that the district court erred by applying too stringent a standard for injury.  The requisite burden of proof on the injury element of a false advertising claim is dependent upon the type of relief sought.  A claimant seeking injunctive relief must prove that he is likely to be injured.  *See Schlotsky's, Ltd. v. Sterling Purchasing and Nat'l Distrib. Co.*, 520 F.3d 393, 401 (5th Cir. 2008).  A claimant seeking disgorgement of profits "must demonstrate injury or likely injury due to the defendant's false advertising."  *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 919 F.3d 869, 877 (5th Cir. 2019).  A claimant seeking actual damages must prove that he has been injured in some way.  *See Logan*, 263 F.3d at 463.  The "some injury" requirement does not necessitate proof of actual losses.  *See id.* at 462–63.  "A plaintiff must nevertheless put forth 'competent summary judgment evidence that indicates that consumers would have bought [plaintiff's] products instead of the [defendant's products] in the absence of the defendant[']s[] allegedly false . . . statements."  *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 376 (5th Cir. 2002).

In their complaint, Plaintiffs seek, among other forms of relief, injunctive relief, disgorgement of profits, and actual damages.  Accordingly, Plaintiffs assert that they should have been required to prove only the likelihood of injury, as opposed to actual injury, in order to survive summary judgment. Plaintiffs further contend that the district court erred by requiring a specific type of evidence—lost sales.  But a review of the court's summary judgment order belies that assertion.  The district court simply evaluated the injury evidence that Plaintiffs presented, most of which was offered in support of their allegation of lost sales.  We agree with the district court that Plaintiffs' injury evidence fails to raise a genuine issue of material fact.

In their opening brief, Plaintiffs contend they raised several categories of injury evidence at summary judgment: (1) Plaintiffs and Defendants were direct competitors in the flange market; (2) deposition testimony from Plaintiffs' executives that Defendants' statements caused Plaintiffs to lose sales; (3) customer statements which the district court declined to consider because they constitute inadmissible hearsay; and (4) Plaintiffs' damages expert report and testimony.[2]  We address each in turn.

First, Boltex and Weldbend contend that because they and Defendants are among the market leaders for flanges within a limited pool of competitors,

---

[2] To the extent Plaintiffs argue that emails sent to two customers by Galperti create an independent factual dispute as to likely injury, the Lanham Act is only triggered by "commercial advertising or promotion." 15 U.S.C. § 1125(a).  Long-standing precedent in this circuit holds that, in order to constitute "commercial advertising or promotion," the challenged communication must have been "disseminated sufficiently to the relevant purchasing public." *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1384 (5th Cir. 1996). Though we have held that a communication sent to 11 customers in a market consisting of 74 customers was sufficiently disseminated to trigger the protections of the Lanham Act, *id.*, Galperti has demonstrated that the "relevant purchasing public" here consisted of as many as 81 customers—a fact that Boltex does not deny—while the challenged communications were only distributed to two customers.  Further, Plaintiffs do not argue and have identified no evidence suggesting that the two customers who received the challenged communications wield outsized purchasing power.  Because these two emails were not "commercial advertising or promotion," the Lanham Act does not apply to representations made in them.

there should be a presumption that they were injured by Defendants' allegedly false statements that their flanges were normalized. But Plaintiffs cite no controlling caselaw which sets out such a flexible standard.[3] Without more, Plaintiffs' argument on this point is meritless.

Next, Boltex and Weldbend point to deposition testimony as evidence of lost sales. Plaintiffs begin with testimony from Frank Bernobich, Boltex's president, and James Coulas Jr., Weldbend's president, asserting that if Galperti had not normalized their flanges or their customers knew that they were not normalized, Plaintiffs would have gotten some of that business. A review of these executives' testimony confirms the district court's conclusion that it is speculative and inadmissible hearsay.

When asked which customers had purchased Defendants' flanges instead of Plaintiffs', Bernobich speculated about losing a few customers before concluding, "I have no idea the number of people." When further prodded by counsel about lost sales, Bernobich summarily concluded that customers would not have purchased flanges that were not normalized and Plaintiffs "would have certainly gotten a portion of that business." Bernobich's testimony serves as nothing more than the kind of conclusory allegations and unsubstantiated assertions which cannot defeat summary judgment. *See SEC v. Arcturus Corp.*, 928 F.3d 400, 409 (5th Cir. 2019).

Coulas' testimony is likewise unhelpful. After Coulas named four customers that had allegedly purchased Defendants' flange instead of Plaintiffs', counsel asked how he knew that, and Coulas responded, "I'm pretty sure we've been told that they placed orders with Galperti or ULMA, because

---

[3] Even the out-of-circuit cases Plaintiffs cite in their reply brief to support their argument that being in direct competition with Defendants, standing alone, is sufficient to demonstrate likely injury are unpersuasive, as the cases Plaintiffs cite have significant factual and evidentiary distinctions from the instant case.

their—their customers are now requesting it." Not only is the reliability of this testimony tenuous at best, but also, whatever limited knowledge Coulas has of these alleged lost sales stems from statements made by customers to a Weldbend salesperson; this information was then at some point relayed to Coulas by an unidentified source. This is classic hearsay evidence; and indeed, certain portions of Coulas' testimony actually constitute hearsay within hearsay. *See* Fed. R. Evid. 801(c)(2). Accordingly, Coulas' testimony cannot be considered at summary judgment unless Plaintiffs show that the material may be presented in a form that would be admissible at trial. *See Lee v. Offshore Logistical and Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017). Plaintiffs failed to do so. *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995).

Plaintiffs' other testimonial evidence suffers from similar defects. In his deposition, Doyle Adam, Boltex's sales manager, testified that two customers told Boltex that it had lost sales to Defendants.[4] Again, this is plainly hearsay. *See* Fed. R. Evid. 801(c). Therefore, Adam's testimony, like Coulas' testimony, was properly identified by the district court as inadmissible hearsay evidence which should not be considered at summary judgment, other than in a form that would be admissible.[5] Moreover, in responding to counsel's prompts, Adam agreed that price, the delivery date, and the lead time are common reasons why Boltex could lose a sale, but at no point did Adam indicate the

---

[4] Adam, however, does not identify who at Boltex was told about these lost sales.

[5] Although Plaintiffs neglected to raise this argument in the district court, Plaintiffs now contend that Adam's testimony meets the business records hearsay exception under Rule 803(6) because Adam testified that Boltex keeps customer reports about lost sales. This argument has no merit. Most obviously, the business records exception does not apply here because the evidence in question is deposition testimony about supposed customer reports, not the actual customer reports themselves. *See United States v. Wells*, 262 F.3d 455, 460–62 (5th Cir. 2001). There is no indication, nor do Plaintiffs even argue, that they produced these customer reports, an affidavit attesting to their existence or authenticity, or otherwise show that Adam's testimony satisfies any of the requirements for business records. *See* Fed. R. Evid. 803(6). Plaintiffs' additional argument that Adam's testimony is admissible as a residual exception under Rule 807 likewise lacks merit. *See* Fed. R. Evid. 807.

reason for these unidentified lost sales that allegedly went to Defendants. So, even if Adam's testimony were considered on summary judgment, there is nothing in the record to suggest that the alleged lost sales Adam mentions were the result of Defendants' normalization representations.

Although the next round of testimony Plaintiffs offer as evidence is admissible, it does not create a genuine issue of material fact as to injury. Plaintiffs first cite the testimony of F.T. Graff, a vice president at MRC Global (MRC), a distributor of flanges in the United States. Graff's statements confirm that at some point in the past MRC purchased flanges from Galperti and that MRC currently purchases flanges from Boltex. But there is no testimony indicating that MRC would have bought Boltex's flanges—much less Weldbend's flanges—instead of Galperti's in the absence of Defendants' allegedly false statements. *See IQ Prods.*, 305 F.3d at 376. Plaintiffs then cite the testimony of Susan Bouquet, a director at another distributer, DistributionNOW (DNOW). Bouquet testified that DNOW relies on Galperti's representations that it normalizes its flanges, and further that, hypothetically, if DNOW could not get a flange from Galperti, DNOW, generally speaking, would be able to get the flange from another one of its core suppliers. Bouquet's testimony though does not demonstrate that DNOW would actually take such action or would even be likely to take that action—only that DNOW, generally speaking, *would be able* to do so. Moreover, even contemplating such a situation, there is a fourth core supplier, Coffer, to which any potential diverted sales could have gone if Galperti could not supply the normalized flanges DNOW sought. And there are also additional suppliers, *e.g.* ULMA, from whom DNOW may have purchased the flanges sought. Although Plaintiffs need not show specific lost sales, they must still produce enough evidence to confirm there exists a "real and immediate threat of future or continuing injury

apart from any past injury." *See Retractable Techs.*, 919 F.3d at 875.  We conclude that these two customers' testimonies do not suffice.

Lastly, Plaintiffs assert that they demonstrated evidence of injury through the report of their damages expert, Thomas Britven.  But this argument is unpersuasive.  Plaintiffs did not rely on Britven's report to establish causation before the district court.  Indeed, Plaintiffs did not identify any portion of the report related to causation in their summary judgment briefing to the district court.  We will not consider this new theory about the evidence that was never pinpointed for the district court.

As to Plaintiffs' unfair competition claims, we generally analyze Lanham Act false advertising claims and common law unfair competition claims together.  *See, e.g.*, *King v. Ames*, 179 F.3d 370, 374–75 (5th Cir. 1999).  Consequently, Plaintiffs' failure to produce injury evidence creating a genuine issue of material fact on their Lanham Act claims dooms their unfair competition claims, as well.  Accordingly, we AFFIRM the district court's summary judgment on all of Plaintiffs' claims.

## IV.

In its answer to Plaintiffs' complaint, Galperti raised counterclaims against Plaintiffs for false designation of origin on its goods, false advertising, and unfair competition.[6]  Galperti alleged that Plaintiffs violated the Lanham Act by advertising their flanges as being of U.S. origin.  Galperti sought, *inter alia*, injunctive relief and disgorgement of profits.

Yet, as with Plaintiffs' claims, the district court summarily concluded that Galperti, on its counterclaims, likewise failed to provide any evidence that created a genuine issue of material fact as to injury.  Accordingly, the court

---

[6] Recall that ONG did not bring counterclaims against Plaintiffs.

No. 19-20440

granted summary judgment in favor of Plaintiffs on all of Galperti's Lanham Act counterclaims. And the court granted summary judgment on all of Galperti's unfair competition claims, as well. On appeal, Galperti contends that it produced sufficient summary judgment evidence to create a fact issue as to whether Galperti was likely to be injured by Plaintiffs' alleged misrepresentations and whether Galperti was entitled to disgorgement of Plaintiffs' profits.

Because of the type of relief it sought, Galperti was not required to prove actual injury, but had to at least prove the likelihood of injury. *See Schlotzsky's*, 520 F.3d at 401. Nevertheless, the district court concluded that Galperti failed to prove even a likelihood of injury because Galperti had not presented any evidence that would allow a factfinder to infer that the parties are competitors in the market for U.S.-sourced flanges. We agree.

At summary judgment, Galperti did not point to evidence of, nor did it even assert, that it produces U.S.-sourced flanges. Instead, Galperti appears to argue that it is likely to be injured because it does not falsely advertise its foreign-sourced flanges as being U.S.-sourced, as Plaintiffs allegedly do. But that theory of injury fails for Galperti because any profits Plaintiffs gain from their allegedly false advertising would not be at Galperti's expense unless Galperti too competes in the market for U.S.-sourced flanges. Yet, it is not until the instant appeal that Galperti explicitly avers that it competes in such a market. In support, Galperti points to the declaration of Andrea Galperti, a Director for the company, wherein he states that some of the steel Galperti uses is of United States origin. He also states that although Galperti does not have any commercial advertisements touting that its flanges are American-made, "Galperti has the ability to and does manufacture large numbers of carbon steel flanges entirely from U.S. sourced materials, and those flanges qualify as [American-made]."

10

But at summary judgment, Galperti's only allusion to Andrea Galperti's declaration is in a footnote. And instead of citing the above statements, as it now does on appeal, Galperti cited Andrea Galperti's declaration for the proposition that "Galperti is at a material disadvantage against [Plaintiffs] who commercially advertise that flanges are [']Made in the USA['] or the like without actually using U.S.-sourced steel and forgings because Galperti does not falsely advertise its non-U.S. steel and flange-sourced products as [']Made in America['] or the like." Galperti's contention that it is likely injured because Plaintiffs falsely advertise their flanges while Galperti does not is unpersuasive. Galperti cannot demonstrate injury or likely injury simply because they too could falsely advertise their foreign-sourced flanges as being U.S.-sourced, but they do not. Rather, Galperti was required to demonstrate that because it competes in the same market as Plaintiffs—the market for U.S.-sourced flanges—when Plaintiffs falsely advertised their flanges as being American-made, Galperti was likely injured.

Because Galperti produced insufficient summary judgment evidence which would allow a factfinder to infer that the parties are competitors in the market for U.S.-sourced flanges, we affirm the district court's grant of summary judgment as to Galperti's Lanham Act claims for false designation of origin and false advertising.

Galperti's counterclaims for unfair competition likewise fail. Unfair competition requires that the "plaintiff show an illegal act by the defendant which interfered with the plaintiff's ability to conduct business." *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000). "Although the illegal act need not necessarily violate criminal law, it must be an independent tort." *Id.*

Galperti alleged unfair competition in three ways. First, Galperti alleged unfair competition based on its Lanham Act claims. As previously stated, we analyze Lanham Act false advertising claims and common law

unfair competition claims together. *See, e.g.*, *King*, 179 F.3d at 374–75. We therefore affirm the court's grant of summary judgment as to Galperti's unfair competition claims that rely on its Lanham Act claims. *See id.* Galperti also alleged unfair competition when Weldbend underreported the yield strength of its flanges, and when Boltex "misrepresented itself as having expertise in the field of carbon steel flanges and misrepresenting to consumers what the technical standards are for ASTM A105 carbon steel flanges." The district court, finding that Galperti had not provided any summary judgment evidence that these acts "interfered with their ability to conduct business," granted summary judgment on all of Galperti's unfair competition claims. Seeing no error in the district court's analysis and a lack of evidence to support Galperti's contentions, we affirm summary judgment on these unfair competition claims, as well.

For these reasons, we AFFIRM the district court's summary judgment order disposing of all of the parties' claims.